FIRST DIVISION

September 30, 2004

No. 1-01-1902

NORTHWEST DIVERSIFIED, INC., Assignee

of Dearborn Wholesale Grocers, Inc.
, 

Plaintiff-Appellant,

v.

NIKUNJ D. DESAI
,

Defendant-Appellee.

))))))))))))

Appeal from the

Circuit Court of

Cook County

93 M 1158124

Hon. Jacqueline P. Cox, Judge Presiding.

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff-appellant, Northwest Diversified, Inc. (Northwest), appeals from judgments entered in favor of defendant-appellee, Nikunj Desai, on May 11, 2001, and May 23, 2001.  On November 2, 1995, Dearborn Wholesale Grocers, Inc. (Dearborn), obtained a judgment in Cook County against Desai in the amount of $17,672.79, plus $300 in attorney fees and costs.  The judgment arose out of a monetary dispute between Dearborn and Desai with regard to a food and liquor business operated by Desai in Lake County.  Ultimately, the judgment was assigned from Dearborn to Northwest, which is engaged in the business of purchasing judgments and attempting to collect them. 

At some point in the fall of 1998, Northwest discovered that Desai owned residential property in Lake County, Illinois, and  Northwest obtained a judgment lien against the property by recording a memorandum of judgment in Lake County.  Using the sheriff of Lake County (Sheriff), Northwest attempted to levy and to execute the judgment against Desai's residential property. Northwest successfully bid on the property at a sale conducted by the Sheriff on April 19, 1999.  However, Desai filed a motion to set aside the Sheriff's sale on the ground that the assignment between Dearborn and Northwest was invalid.  

On May 6, 1999, Judge Glynn Elliott entered an order arresting the judgment and the levy sale, finding, among other things, that there was no valid assignment of record and because Northwest was not a party to the original judgment proceedings, it could not collect on the judgment against Desai.  

Through a series of orders, which we detail extensively below, another judge, Jacqueline Cox, vacated the order arresting the sale finding that the levy sale extinguished the trial court's jurisdiction.  Judge Cox further held that when Desai cashed a homestead exemption check, he accepted the levy sale and could not take the exemption and also redeem the property.  Subsequently, however, Judge Cox vacated that order and found that Northwest "was not a party to the judgment at the time of the levy sale in that the assignment of the judgment to Northwest was filed several months after the levy sale".  Eventually, Judge Cox entered an order allowing Desai to pay Northwest the redemption amount in exchange for the property.  Northwest appeals from those orders.    
 
We state the following background facts
 
and before beginning point out that this case has a long and complicated procedural history in the trial court.

As noted above, Northwest was in the business of purchasing judgments and seeking to collect them.  Kenneth Swiatek, president of Northwest, stated in an affidavit that he and Wardell Brooks, a credit manager at Dearborn, discussed the possibility of Northwest purchasing judgments from Dearborn, including Dearborn's judgment against Desai.  Brooks informed Swiatek that Dearborn had "written off" the judgment against Desai and that he had the authority to sell the judgment for "whatever he could get."  According to Swiatek's affidavit, he and Brooks "reached an agreement" on August 26, 1998, under which Dearborn would assign its judgment against Desai to Northwest for $1.  The purported assignment (Brooks assignment), memorialized in written form, was signed by Brooks, identified Northwest as the assignee, and was dated August 26, 1998.  Although the Brooks assignment recites that it was given "Upon receipt of good and valuable consideration herein acknowledged and received ***," the document itself never states what actual consideration was given or that $1 was ever paid by Northwest to Dearborn.  We also point out that the affidavit of Swiatek never states that any consideration, specifically $1, was paid by Northwest to Dearborn for the purported assignment dated August 26, 1998.
  

Swiatek also stated in his affidavit that he learned Desai owned real property in the form of a residence in Lake County, Illinois.  On September 9, 1998, Northwest, as the assignee of Dearborn, obtained a memorandum of judgment against Desai in Cook County.  In his affidavit, Swiatek stated that he took the memorandum of judgment and the assignment to the office of the court clerk in Cook County.  The memorandum of judgment was entered by Judge Spurlock on September 9, 1998, but Swiatek testified that the clerk's office returned the assignment to him unsigned and informed him that assignments of judgment were not filed.  The assignment of judgment was not filed in Cook County with the court clerk until June 3, 1999.  According to Swiatek, Northwest recorded the memorandum of judgment with the Lake County recorder of deeds on September 10, 1998.  

Swiatek also stated that on December 10, 1998, he delivered a letter to the Sheriff and requested that the Sheriff place a levy and execute the judgment against Desai's residential property.  During the pendency of the levy, Desai paid Dearborn $5,000 on January 4, 1999, and $2,000 on February 15, 1999, in an attempt to partially satisfy the judgment.  Dearborn accepted these payments from Desai.

In a letter dated February 15, 1999, Neil Zweiban, general counsel for Dearborn, informed Northwest that the assignment of the Desai judgment from Dearborn to Northwest was invalid because Brooks, who was not an officer of Dearborn, "had no authority to sell such assets."  The letter further indicated that there was never any consideration paid for the assignment and as a result there was no sale of the judgment from Dearborn to Northwest.  

On April 6, 1999, Zweiban sent a letter to counsel for Northwest which again indicated that the assignment at issue was "not authorized" and was not given for "adequate consideration."  However, the letter proposed certain conditions in order to validate the assignment. These conditions expressly stated as follows:

"[Dearborn] will keep Five Thousand Dollars ($5,000.00) of the funds paid to it [by] [Desai], funds paid in partial satisfaction of the judgment against [Desai]. [Dearborn] will remit the additional funds (Two Thousand Dollars $2,000.00) back to [Desai] as you requested, or we will remit the Two thousand Dollars ($2,000.00) to [Northwest].  We will not interfere in your clients' sheriff's sale provided that [Desai] is given full credit for the Five Thousand Dollar ($5,000.00) payment, or if the Two Thousand Dollars ($2,000.00) is remitted to you [Desai] will receive a Seven Thousand Dollar ($7,000.00) credit.  (That is, the judgment amount for [Desai] is reduced by the amount paid)." 

In his affidavit, Swiatek confirmed that on April 14, 1999, Northwest "verbally agreed" to the above terms in exchange for a valid assignment. 

Zweiban also sent a letter to Desai dated April 15, 1999, which notified Desai that negotiations for the assignment of the judgment from Dearborn to Northwest were on-going and that, in the event a "confirmatory letter" was sent to Zweiban from Northwest's counsel, all rights to the judgment would then "be in Northwest's hands."  

Zweiban then sent another letter to Northwest's counsel, dated April 17, 1999, stating that, as of that date, he had not received the letter "confirming the settlement."  On April 19, 1999, the date of the Sheriff's sale, Northwest's counsel sent a letter to Dearborn's counsel bearing the same date, which indicated that Northwest agreed to the settlement terms outlined in the letter written by Zweiban on April 6, 1999.  On April 29, 1999, ten days after the sale, Dearborn mailed Northwest a check dated April 26, 1999, in the amount of $2,000, made payable to Northwest pursuant to the terms of Zweiban's April 6, 1999, letter.  On July 27, 1999, Dearborn "reaffirmed" the prior assignment of judgment to Northwest dated August 26, 1998.  After the "reaffirmed assignment," there  was no memorandum of judgment ever recorded in Lake County.

While the dispute over the assignment was occurring between Dearborn and Northwest, the Sheriff set a sale for the property on March 15, 1999.  In his affidavit, Swiatek stated that Northwest postponed the sale to April 19, 1999, because Dearborn and Northwest were still negotiating the validity of the assignment.  Nonetheless, on April 19, 1999, the Sheriff conducted a levy sale for Desai's property.  Northwest was the successful bidder in the amount of $25,159.16, which included a $7,500 payment to cover Desai's right to a homestead exemption under section 12-122 of the Illinois Code of Civil Procedure.  735 ILCS 5/12-122 (West 2000).
  
Swiatek also stated in his affidavit that "[a]bout twenty minutes after Northwest successfully bid for the property, Desai appeared at the sale and demanded to satisfy the judgment in full for $10,000," which the Sheriff refused.  Northwest was issued a deed to Desai's property by the Sheriff on July 7, 2000.

Within 30 days of the actual Sheriff's sale and prior to the issuance of the deed, Desai filed a motion in Cook County to set aside the Sheriff's sale contending that the assignment of judgment to Northwest was invalid.  On May 6, 1999, Judge Elliott heard the motion and found, among other things, that: (1) the attorney for Dearborn notified Northwest that the written assignment was invalid because it was not signed by an officer of the corporation; (2) there was no assignment of judgment of record on file with the court; and (3) Northwest was not a party of record to the original judgment proceedings and thus could not collect and satisfy the judgment.  Pursuant to section 2-1204 of the Illinois Code of Civil Procedure, Judge Elliott arrested the judgment and proceedings on the levy sale.  735 ILCS 5/2-1204 (West 2000).  
In the order, Judge Elliott also issued a rule to show cause why Northwest and Swiatek should not be held in criminal contempt for several reasons, including an alleged violation of the Collection Agency Act (225 ILCS 425/1 
et seq.
 (West 2000)) for failing to file the assignment in the court file.

In Northwest's memorandum of law in support of its motion to dismiss the rule to show cause, Northwest claimed that, on June 3, 1999, Swiatek sought to comply with Judge Elliott's May 6, 1999, order by attempting to file the memorandum of judgment and the assignment in the court file.   According to Northwest's motion to dismiss the rule to show cause, a clerk supervisor initially refused to accept the assignment for filing, but when Swiatek told him that Judge Elliott wanted the assignment filed, the clerk went ahead and filed the memorandum of judgment and assignment.  The record shows that the assignment of judgment was filed on June 3, 1999, in Cook County but as pointed out above no memorandum of judgment reflecting the "reaffirmed assignment" was subsequently filed in Lake County.   

On October 28, 1999, a status order indicated that the case would follow Judge Elliott.  During the time the parties briefed the issues concerning the rule to show cause, the case was transferred to Judge Jacqueline Cox.  On April 12, 2000, Judge Cox dismissed the rule to show cause and on May 24, 2000, she vacated Judge Elliott's order of May 6, 1999, which arrested the judgment and proceedings of levy sale.

On August 18, 2000, Desai filed a motion to allow payment of judgment.  In the motion, Desai claimed that the statutory redemption period after the sale was tolled from May 6, 1999, when Judge Elliott arrested the levy and judgment, to May 24, 2000, when the order was vacated by Judge Cox, and that interest during that period should be tolled as well.  In an order dated September 20, 2000, Judge Cox granted Desai's motion to allow payment of the judgment because Desai paid Dearborn $7,000 toward the $17,672.79 judgment before the April 19, 1999, Sheriff's sale.   In the same order, Judge Cox found that Northwest was judicially estopped from denying Desai the right to pay "the judgment when [Northwest] refused to accept payment of $17,659.17 while the assignment was being challenged." The order also provided that Desai was required "to pay 10% interest on the $25,159.16 bid amount from April 19, 1999[,] to May 6, 1999[,] and from May 24, 2000[,] to today's date."  The order further indicated that the May 6, 1999, order entered by Judge Elliott tolled the expiration of the redemption period
(footnote: 1) "for the duration of that order up to and including May 24, 2000[,] when [Judge Cox] vacated Judge Elliott's Order."  On October 2, 2000, Judge Cox entered an amended order, which was almost identical to the September 20, 2000, order except that the amended order stated that Northwest was judicially estopped from denying Desai the right to pay "the bid amount when [Northwest] refused to accept payment of $17,659.17 while the assignment was being challenged."  The amended order, dated October 2, 2000, vacated the September 20, 2000, order.

On October 25, 2000, Desai filed a motion to clarify the orders of September 20, 2000, and October 2, 2000, in regard to  what date interest was payable and to order Northwest to issue a quit claim deed to Desai because Northwest had already recorded an interest in the property by virtue of the Sheriff's deed issued to it.  We cannot find Judge Cox's ruling on this motion in the record.

On November 1, 2000, Northwest filed a motion to reconsider Judge Cox's entry of the October 2, 2000, order.  Desai then filed  a response to Northwest's motion to reconsider on November 21, 2000.  On the same day, Desai also filed another motion to clarify the court's orders of September 20, 2000, and October 2, 2000, and to require Northwest to issue him a quit claim deed for the property.  On November 29, 2000, Judge Cox took the matter under advisement.  On December 22, 2000, Judge Cox vacated her order of October 2, 2000, and denied Desai's motion to allow payment, "because the levy sale extinguished the judgment, [and] the May 6, 1999[,] Order arresting the levy was entered without jurisdiction."  In the same order, Judge Cox further determined that, "when Desai accepted and cashed the Homestead Exemption check[,] he accepted the levy sale, [and] he [could not] take the exemption and redeem the property."

On January 19, 2001, Desai filed a motion to reconsider the court's order of December 22, 2000, contending that the court misinterpreted the law and the facts when it made its ruling.  In the same motion, Desai requested that the court rule on Desai's pending motion to clarify the order and to issue a quitclaim deed to Desai.  The court again took the matter under advisement in an order dated April 11, 2001.  On May 11, 2001, Judge Cox granted Desai's motion to reconsider "because Northwest *** was not a party to the judgment at the time of the levy sale in that the assignment of the judgment to Northwest was filed several months after the levy sale."  Thus, Judge Cox vacated her order of December 22, 2000.

On May 21, 2001, Northwest then filed a motion to reconsider Judge Cox's ruling of May 11, 2001.  On May 23, 2001, Judge Cox denied Northwest's motion to reconsider 
and ordered that Desai post $26,159.66 as the redemption amount owed Northwest within 14 days and that Northwest reconvey its interest in the property to defendant within 14 days.  Northwest appeals the orders entered May 11, 2001, and May 23, 2001.

We consider the following issues on appeal: (1) whether the assignment from Dearborn to Northwest was valid; (2) whether the trial court had jurisdiction to arrest the judgment and levy sale; (3) whether the redemption period was properly tolled; and (4) whether Desai waived his right to redeem the property.  
 

We first address whether the assignment from Dearborn to Northwest was valid at the time of the levy sale.  Northwest suggests that we apply a 
de novo 
standard of review because the parties agreed upon the underlying facts, the trial court took no testimony, each party requested that relief be granted as a matter of law, and the proceedings below were "akin" to summary judgment motions.  Desai does not suggest that we apply an alternative standard of review.

 
In general, our standard review of a trial court's decision to set aside a sheriff's sale is whether the trial court abused its discretion.  
Northwest Diversified, Inc. v. Mauer
, 341 Ill. App. 3d 27, 33, 791 N.E.2d 1162 (2003).  
However, in cases where the trial court heard no testimony and based its decision entirely on documentary evidence, " 'the rationale underlying a deferential standard of review is inapplicable, and a reviewing court will make an independent decision on the facts. [Citations.]' "  
Northwest Diversified
, 341 Ill. App. 3d at 33.  Because the court here based its decision entirely on documentary evidence and we are interpreting the judgment lien statute (735 ILCS 5/12-101 
et seq
. (West 2000)), a question of law, the trial court's ruling is subject to 
de novo 
review.  
Northwest Diversified
, 341 Ill. App. 3d at 33.

Enforcing judgments against real estate in Illinois is governed by section 12-101 of the Illinois Code of Civil Procedure.  735 ILCS 5/12-101 
et seq. 
(West 2000).  Specific guidelines of section 12-101 provide for the "creation of a judgment lien against the real estate of a debtor."  
Dunn v. Thompson
, 174 Ill. App. 3d  944, 947, 529 N.E.2d 297 (1988).  A judgment lien is created once a " 'certified copy or memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located.'  [Citation.]"  
Dunn
, 174 Ill. App. 3d at 947.  "A valid judgment, in order to create a lien, must possess two qualifications: (1) it must be final, valid, and for a definite amount of money; and (2) it must be such a judgment that execution may issue thereon."  
Dunn
, 174 Ill. App. 3d at 947.  An enforceable judgment is required in order to have a judgment lien to levy upon.  R. Ostler, 
Enforcing Judgments Against Real Estate in Illinois: A Step-By-Step Guide
, 89 Ill. B.J. 234, 234-35 (2001).  

The statute
 establishes that a valid judgment lien can be perfected and the property can be subject to a levy sale by the sheriff in the county where the judgment debtor owns the real estate.  735 ILCS 5/12-101 
et seq. 
(West 2000).  At the time the levy sale was conducted in this case (April 19, 1999), a successful purchaser at a levy sale could merely request a deed from the sheriff at the end of the redemption period.
(footnote: 2)  R. Ostler, 
Enforcing Judgments Against Real Estate in Illinois: A Step-By-Step Guide
, 89 Ill. B.J. 234, 238 (2001).  The statute must be strictly complied with, and when there are irregularities in the levy sale process, such as improper notice and an inadequate sale price, the trial court may set aside the sale.  
Northwest Diversified
, 341 Ill. App. 3d at 39. 

In general, an assignment requires an assignable right.  Restatement (Second) of Contracts §324, Comment A, at 37 (1979).  Assignments are governed by contract law, and an assignment is subject to the same requisites for validity as are other contracts, such as intent, mutuality of assent, capacity to contract, legal subject matter, and consideration. 6 Am. Jur. 2d 
Assignments
 §118 (2004); 
Johnson v. Nationwide General Insurance Co.
, 937 F. Supp. 186, 193 (N.D.N.Y. 1996).  An assignment, "oral or written, occurs when there is a transfer of some identifiable interest from the assignor to the assignee."  
Klehm v. Grecian Chalet, Ltd.
, 164 Ill. App. 3d 610, 616, 518 N.E.2d 187 (1987).  The "creation and existence of an assignment is to be determined according to the intention of the parties, and that intention is a question of fact to be derived not only from the instruments executed by them, but from the surrounding circumstances."  
Rivan Die Mold Corp. v. Stewart Warner Corp.
, 26 Ill. App. 3d 637, 642, 325 N.E.2d 357 (1975).  Whether an assignment has occurred 
"is dependent upon proof of intent to make an assignment and that intent must be manifested."  
Strosberg v. Brauvin Realty Services, Inc.
, 295 Ill. App. 3d 17, 30, 691 N.E.2d 834 (1998).  If a valid assignment has occurred, "the assignee acquires all of the interest of the assignor in the property that is transferred."  
Buck v. Illinois National Bank & Trust Co.
, 79 Ill. App. 2d 101, 106, 223 N.E.2d 167 (1967). 
  

Section 12-101 states, "a judgment is a lien on the real estate of the person against whom it is entered *** only from the time a *** memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located."  735  ILCS 5/12-101 (2000).  In order to create a lien, not only must there be  the recording of a memorandum of judgment but there must be an enforceable judgment standing behind the memorandum.  
Dunn
, 174 Ill. App. 3d at 947.  As noted above, the record shows that Northwest's memorandum of judgment was filed in Lake County on September 10, 1998.  However, based upon our 
de novo 
review of the record, the memorandum of judgment was invalid because there was no valid assignment of Dearborn's judgment to Northwest at that time.  Because Northwest did not own an enforceable judgment, there was no lien on Desai's property on September 10, 1998, upon which to levy, and the Sheriff's sale was improper.

In support of our conclusion, we note the following undisputed facts.  The letter from Zweiban to Swiatek dated February 15, 1999, stated that Zweiban was not aware of any sale of Dearborn's judgment against Desai.  The letter instructed Swiatek to send Zweiban a copy of a valid assignment of judgment in the event he could produce one.  Zweiban further stated that Wardell Brooks was not an officer of Dearborn and that he had no authority to sell the judgment.  The letter also noted Swiatek's admission that Northwest paid no consideration for the judgment.  Based on these facts, Zweiban wrote in that same letter that there was no sale of the judgment from Dearborn to Northwest.  

On March 4, 1999, Zweiban sent a letter to Desai warning Desai to contact the Sheriff and to retain counsel because "a creditor named Northwest Diversified was proceeding against [Desai] on the *** judgment."  The letter advised Desai that it was Dearborn's position that Northwest "did not have a valid claim to the judgment at issue," but that if Northwest did "persist in their enforcement of the judgment [Desai's] legal rights [could] be affected."  It further noted that Desai had paid $7,000 to Dearborn, Northwest made no claim on the funds, and a payoff letter was being prepared by Dearborn with regard to Desai's debt. 

The April 6, 1999, letter from Zweiban to counsel for Northwest noted above set forth certain conditions in order to validate the assignment.  Specifically, these conditions were that Dearborn would pay Northwest $2,000 of the funds it received from Desai, Northwest would not pursue its claim for the remaining $5,000 paid to Dearborn from Desai, and Desai would be given $7,000 credit for the funds he previously paid to Dearborn in partial satisfaction of the judgment. 

On April 15, 1999, Zweiban sent still another letter to Desai which explained to him that negotiations for the assignment of the judgment to Northwest were ongoing and that, in the event a "confirmatory letter" was sent to Zweiban from Northwest's counsel, all rights to the judgment would "be in Northwest's hands."

Zweiban then sent a letter to Northwest's counsel dated April 17, 1999, stating that, as of that date, he had not received the letter "confirming the settlement."  

On April 19, 1999, the date of the Sheriff's sale, Northwest's counsel sent a letter bearing the same date, which indicated that Northwest agreed to the settlement terms as outlined in the letter written by Zweiban on April 6, 1999.

In his affidavit, Swiatek admitted that Northwest postponed the Sheriff's sale to April 19, 1999, because Northwest and Dearborn were still negotiating the validity of the assignment.  He further stated: 

"On the morning of April 19, 1999, Mr. Peterson [counsel for Northwest], on behalf of Northwest, sent to Mr. Zweiban a letter by facsimile accepting the settlement in writing. *** I understood that Northwest therefore could go ahead with the sheriff's sale later that day."  

However, not until April 29, 1999, ten days after the sale, did Dearborn actually send Northwest a check dated April 26, 1999, in the amount of $2,000, payable to Northwest under the terms of Zweiban's April 6, 1999, letter.

The existence of an assignment is to be determined according to the intent of the parties, and that intention is a question of fact to be derived not only from the instruments executed by the them, but from the surrounding circumstances.  
Rivan Die Mold
, 26 Ill. App. 3d at 642.  Here, the correspondence and surrounding circumstances show that the parties had not resolved their dispute over the validity of the assignment until April 19, 1999, when they finally agreed on the conditions for the assignment.  Despite this fact, Northwest executed a levy sale on Desai's property that was based on a memorandum of judgment filed eight months before the assignment was executed.  

Additional support for our finding comes from the fact that after the alleged Brooks assignment was entered into between Dearborn and Northwest, Dearborn accepted money from Desai in partial satisfaction of the judgment.  Zweiban's letter to Northwest's counsel dated March 4, 1999, indicated Dearborn had accepted $7,000 from Desai.  The fact that Dearborn was still accepting payments from Desai after the August 26, 1998, date establishes that there was no valid assignment at the time the memorandum of judgment was filed. 

The February 15, 1999, letter also shows that Brooks was without authority to assign the judgment because he was not an officer of Dearborn.  As we noted above, to have an assignment, the assignor must have an assignable right. Restatement (Second) of Contracts §324, Comment A, at 37 (1979).  Although Dearborn had an assignable right, it is clear that Brooks did not.  Because Brooks did not have the authority to assign Dearborn's right, Northwest did not acquire the rights to the judgment.  Restatement (Second) of Contracts §324, Comment A, at 37 (1979). 

The February 15, 1999, letter further indicates that there was no consideration paid for the Brooks assignment and that Dearborn believed there to be "no sale."  Northwest never disputes this fact.  Because Dearborn had been given no consideration for the Brooks assignment at the time the memorandum of judgment was filed (September 10, 1998), there was no assignment.  

The Restatement of Contracts, section, 149, establishes that there are two kinds of assignments: "assignments for value" and "gratuitous" assignments.  Restatement of Contracts §149 (1932); 
First National Bank of Stockton v. Pomona Tile Manufacturing. Co.
, 82 Cal. App. 2d 592, 603, 186 P.2d 693, 700 (1947).  An assignment for value is one given for consideration "as security for a right which the assignee, induced by the assignment, thereafter acquires."    Restatement of Contracts §149(5)(d) (1932).  A gratuitous assignment does not require consideration because it involves the receipt of a gift or inheritance.  See Restatement of Contracts §149 (1932); 
Gorham v. Commonwealth Land Title Insurance Co.
, 9 Phila. Co. Rptr. 632, 636 (1983).  The instant case does not involve a gratuitous assignment but one for value. 

Therefore, to be valid, the assignment had to be supported by valuable consideration.  6 Am. Jur. 2d 
Assignments
 §128 (2004); 
Robert S. Pinzur, Ltd. v. The Hartford
, 158 Ill. App. 3d 871, 877-78, 511 N.E.2d 1281 (1987); 
Hillenbrand v. Meyer Medical Group, S.C.
, 288 Ill. App. 3d 871, 875, 682 N.E.2d 101 (1997); 
Dr. Charles W. Smith III, Ltd. v. Connecticut General Life Insurance Co.
, 122 Ill. App. 3d 725, 727, 462 N.E.2d 604 (1984); 
Savage v. Gregg
, 150 Ill. 161, 168, 37 N.E. 312 (1894).  

Although courts are generally "disinclined to question the adequacy or sufficiency of consideration," a "different rule attends where there is some doubt whether there was any actual consideration."  (Emphasis omitted.)  
Agnew v. Brown
, 96 Ill. App. 3d  904, 908, 422 N.E.2d 111 (1981).  

In the instant case
, the Brooks assignment recited that it was given "[u]pon receipt of good and valuable consideration *** received," yet the facts disclose that no consideration was ever exchanged.  Because there was no consideration, let alone valuable consideration, given by Northwest to Dearborn at the time the memorandum of judgment was filed, the Brooks assignment was invalid.  

In 
Agnew
, the defendants were purchasers of a property consisting of 3 stores and 10 residential apartments by contract for deed.  When the defendants became delinquent on their payments to the contract seller, they sought assistance by way of a loan from the plaintiff.  The defendants executed assignments of their interest in the property to the plaintiff and quitclaim deeds and a trustee's deed were issued to the plaintiff.  In return, the plaintiff paid the outstanding contract balance owed to the contract seller.

The plaintiff then attempted to collect rents for the building tenants and sought access to the property.  The defendants refused and the plaintiff sued for injunctive relief.  The defendants counterclaimed on the ground that they executed the assignment documents to provide security for a loan and not to convey the property to the plaintiff.  

At a bench trial, no evidence of consideration in exchange for a purported conveyance of the property was established.  Specifically, the trial court found that although the assignments recited "For value received," no actual consideration had passed between the parties and that the assignments and quitclaim deeds were ineffective to transfer the defendants' interests to the plaintiff.  On review, the appellate court stated that consideration that "is not actually given is insufficient."  
Agnew
, 96 Ill. App. 3d at 907-08, citing Restatement of Contracts 82, Comment C, at 93 (1932).  Because there was no consideration, the court found that the assignments and quitclaim deeds purporting to transfer the property "were properly held invalid by the trial court."  
Agnew
, 96 Ill. App. 3d at 909.  

Similar to 
Agnew
, no consideration was actually given by Northwest to Dearborn for the sale of the judgment in August of 1998.  As a result, the Brooks assignment, upon which the memorandum of judgment, judgment lien, and levy sale were based, was invalid.

We also find that the memorandum of judgment filed on September 10, 1998, was invalid because the facts show it contained an inaccurate judgment amount and therefore was not a judgment on which execution could issue.  
Dunn
, 174 Ill. App. 3d at 947.  As noted above, the "reaffirmed assignment" agreement between the parties indicated that Desai was entitled to a $7,000 credit in partial satisfaction of the judgment.  This credit was not accounted for in the memorandum of judgment filed September 10, 1998.  Further, in order to create a lien, the judgment must be "final, valid, and for a definite amount of money."  
Dunn
, 174 Ill. App. 3d at 947.
 

We also point out that real estate sales have been set aside, even after the redemption period has expired, where the judgment lien statute was not strictly complied with and an irregularity existed in the sale.  
Northwest Diversified
, 341 Ill. App. 3d at 39.

In 
Northwest Diversified
, the purchaser of a residential property at a levy sale appealed the trial court's grant of the judgment debtor's motion to set aside the sheriff's sale on the grounds of deficient service, improper notice, and a grossly inadequate sale price.  The facts showed that Northwest, the assignee of a judgment against the judgment debtor, purchased the property at a levy sale for $10,124.  Northwest then assigned the certificate of sale to LaSalle Bank, N.A. (LaSalle), which received a sheriff's deed after the redemption period expired.

As noted above, the judgment debtor filed a motion to set aside the sale and extend the redemption period because she had never been served with the levy, a copy of the certificate of sale, a copy of the appraisal, and the 60-day notice as required by section 12-911 of the Illinois Code of Civil Procedure.
  735 ILCS 5/12-911 (West 2000).  She further claimed that the property was undersold, stating that she paid $141,000 when she bought it and the home's appraised value was $250,000 in July 2000.  LaSalle argued that the judgment debtor was not entitled to have the sheriff's sale set aside because there were no irregularities in the sale; particularly, evidence of a custom and practice in the sheriff's office to mail a copy of the 60-day notice to homeowners demonstrated that the judgment debtor was served with the 60-day notice in compliance with section 12-911.

The appellate court concluded that the significant issue in the case was what type of service the 60-day notice required in section 12-911 and whether that provision had been satisfied.  
Northwest Diversified
, 341 Ill. App. 3d at 33.  The court pointed out that the sale of one's property to satisfy a debt is a " 'drastic remedy' " and that  "'the provisions of the law by which [the sale] is brought about must be strictly complied with.' "  
Northwest Diversified
, 341 Ill. App. 3d at 35, quoting 
Block v. Hooper
, 318 Ill. 182, 187 (1925).  The court further observed that the policy in Illinois,  " 'where no innocent parties are involved, is to permit a judgment debtor to redeem upon equitable terms even though the period of redemption has expired, where the provisions of the law have not been complied with.' "  
Northwest Diversified
, 341 Ill. App. 3d at 35, quoting 
Mohr v. Sibthorp
, 395 Ill. 418, 424, 69 N.E.2d 486 (1946).
  It then interpreted the express language of section 12-911 to require personal service even though the section did not contain the term "personal service."  
Northwest Diversified
, 341 Ill. App. 3d at 37.  Because the sheriff's department admitted that there was no personal service on the judgment debtor, the court found that section 12-911 was not strictly complied with and an irregularity existed in the sale.  
Northwest Diversified
, 341 Ill. App. 3d at 38.

It further found that the property was sold at a grossly inadequate price because the appraisals and public records in connection with the property estimated its value to be greater than $15,000.  
Northwest Diversified
, 341 Ill. App. 3d at 38-39.  Because the judgment debtor was not personally served with the 60-day notice and the home was sold at a grossly inadequate price, the appellate court found that sufficient grounds existed to set aside the sale.  
Northwest Diversified
, 341 Ill. App. 3d at 38-39.  

In 
Block
, cited above, the supreme court affirmed a trial court's decree setting aside a sheriff's sale and allowing the judgment debtor to redeem the property.  The evidence showed that an irregularity existed rendering the execution invalid because, while the judgment was entered as a joint judgment against a certain codebtor corporation and the appellee, the execution was issued against the appellee alone.  

The supreme court found that it was of "vital concern" to a judgment debtor that notice of the issuance of the execution writ be served on the codebtor and that the sale of the property might  not have been necessary if the execution writ had been issued against both defendants.  
Block
, 318 Ill. at 186.  The court also noted that the sale of a $12,000 property for $173 was a grossly inadequate sale price and that the appellant, who was formerly an attorney, must have known that the sale was unconscionable.  
Block
, 318 Ill. at 187.   Because of the issuance of an invalid execution writ and the inadequacy of the sale price, the court concluded that the appellee should be allowed to redeem his property.  
Block
, 318 Ill. at 187.

In 
Mohr
, 395 Ill. at 424, the supreme court also affirmed a decree by the trial court setting aside a sheriff's sale and allowing the judgment debtor appellee, Sylvia Mohr, the right to redeem a 145-acre farm owned by her and her husband, Ernest Mohr.  The facts showed that an individual named Messick, the assignee of the payee of a judgment note, took judgment by confession against Ernest Mohr and the sheriff conducted a sale. Appellant Sibthorp was the only bidder and he purchased the property for $1,714.  The trial court found that Sibthorp was not a  
bona fide 
purchaser because he held the same position as the judgment creditor, Messick.  The conclusion was based on the fact that Sibthorp had followed the litigation for some time, was familiar with what transpired between the parties, had attended other court proceedings between the parties, and was closely associated with the judgment creditor and his attorney in their dealings with the plaintiffs.  It was further shown that Messick's attorney had previously represented Sibthorp and was present at the counsel table and active in the trial of the cause.

The supreme court found that because Sibthorp held the same position as the judgment creditor, the trial court was correct in finding that he was not a 
bona fide 
purchaser. 
Mohr
, 395 Ill. at 423.  It further found that there was no doubt as to inadequacy of price because the value of the premises was $21,450 and the bid, together with the mortgage lien, amounted to $4,214, leaving a net profit to the purchaser at the time of the sale of $17,236.  
Mohr
, 395 Ill. at 423.  The court further recognized that a statute then in existence required the sheriff to pay Sylvia Mohr a setoff for the value of her inchoate right of dower and that such duty had been overlooked.  
Mohr
, 395 Ill. at 423.  Citing 
Block
, the court noted that the policy in Illinois is to allow a judgment debtor to redeem, even though the redemption period has expired, where the provisions of the law have not been complied with and the judgment creditor would gain a benefit to which he is not entitled.  
Mohr
, 395 Ill. at 424, citing 
Block
, 318 Ill. at 187.  Based on the irregularities set forth above, the questionable nature of the sale to Sibthorp, the inadequacy of the sale price, and the failure to set off the inchoate right of dower, the supreme court affirmed the trial court's decree to set aside the sale and to allow Sylvia Mohr the right to redeem the property.  
Mohr
, 395 Ill. at 425-26. 

Northwest Diversified
, 
Block
, and 
Mohr
 are instructive here because they each affirmed judgments setting aside a sheriff's sale  when the judgment lien statute was not strictly followed.  
Northwest Diversified
, 341 Ill. App. 3d at 38;  
Block
, 318 Ill at 187;
 
Mohr
, 395 Ill. at 425-26. 

Here, the judgment lien statute was not followed because Northwest did not have a valid assignment of the judgment at the time of the sale.  Because Northwest did not have a valid assignment, it had no judgment, and the memorandum of judgment filed on September 10, 1998, did not create a lien on Desai's property.

Therefore, t
he trial court's order of May 11, 2001, finding that Northwest was not a party to the judgment at the time of the levy sale was correct.  The order allowing redemption was also correct.

We also reject 
Northwest's claim that the assignment was valid because it was "ultimately recognized to have been valid at the time of the levy," and that Judge Elliott did not find that the assignment was invalid, "just that it did not appear of record."  Northwest argues that the assignment would have been in the record, but for the erroneous advice from someone in the clerk's office who instructed Swiatek that assignments were not to be filed.  Further, Northwest points out that on July, 27, 1999, Dearborn filed a reaffirmation of assignment once the validity dispute had been resolved, which indicated that the original assignment was valid.  Finally, Northwest relies upon Zweiban's affidavit where Zweiban stated that he informed Desai by letter dated, "4/15/99 indicating that Dearborn was no longer disputing the assignment and that Northwest was the valid assignee."  Based on Zweiban's affidavit, Northwest suggests that Desai knew that the assignment was valid prior to the levy sale on April 19, 1999, "and it was only that Dearborn was questioning the validity, which question was resolved in favor of validity."

Northwest raises these arguments for the first time in its reply brief and does not rely upon any authority for the proposition that the memorandum of judgment and subsequent levy sale were valid  because the assignment was "ultimately recognized to have been valid at the time of the levy."  Arguments raised for the first time in a reply brief are waived under Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)).  
Pickus Construction & Equipment v. American Overhead Door
, 326 Ill. App. 3d 518, 761 N.E.2d 356 (2001).  Rule 341(e)(7) requires citation to relevant authority and a failure to do so results in waiver of the argument.  
McCarthy v. Denkovski
, 301 Ill. App. 3d 69,  74-75, 703 N.E.2d 408 (1998).  Thus, Northwest has waived these arguments.  In any event, these arguments have no merit based upon our discussion above.  

 Northwest further contends that there is no Illinois statute which requires that an assignment be filed and "there is case law finding that filing the assignment with a clerk of court is to no avail or effect." 
 
It also contends that there is no Illinois statute which requires that an assignment be filed in the record; that filing an assignment with the court clerk is "immaterial" and does not constitute constructive notice; that no filing or recording is necessary to perfect an assignment of an account receivable; and that oral assignments are valid in Illinois.

We need not address any of these claims because of our conclusion that there was no valid assignment at the time of the sale.  Because of the invalid assignment, Northwest did not own and did not have an enforceable judgment on which to proceed under section 12-101. 

We next address whether the trial court had jurisdiction to enter the order of May 6, 1999, which arrested the judgment and levy sale.  Because the question of whether the trial court had jurisdiction is a question of law, our review is 
de novo
.  
Mugavero v. Kenzler
, 317 Ill. App. 3d 162, 164, 739 N.E.2d 979 (2000).

Northwest contends that the judgment was "extinguished" at the conclusion of the levy sale by its payment of the bid on April 19, 1999.  It further argues that Judge Elliot "lost" jurisdiction to enter the May 6, 1999, order arresting judgment since the judgment had been "satisfied" after the levy sale.  We are not persuaded by Northwest's claims for several reasons. 

First, the trial judge properly arrested the execution of the judgment and sale as to Northwest because there was no valid assignment of that judgment at the time of the Sheriff's sale.  A
s we noted above, a court can set aside a levy sale if the statutory provisions governing the sale were not followed. 
Northwest Diversified
, 341 Ill. App. 3d at 38; 
Block
, 318 Ill. at 187.  Northwest contends that the statutory provisions governing the sale were not violated in this case.  However, we have already concluded that there was a statutory violation and that the execution was invalid because Northwest was not a judgment creditor at the time of the levy sale.  

Relying upon 
Craddick v. Cotta Gear Co.
, 306 Ill. App. 459, 464, 28 N.E.2d 734 (1940), Northwest also argues that Judge Elliott did not have jurisdiction to arrest the levy in the order of May 6, 1999, because levy sales are not judicial sales in the strict sense.  While we agree that 
Craddick
 does distinguish between levy and judicial sales, it also holds that a trial court has the power to set aside a levy sale for "noncompliance with statutory provisions."  
Craddick
, 306 Ill. App. at 464. 

As discussed above, section 12-101 requires an enforceable judgment held by the judgment creditor to create a judgment lien by which to effect a levy sale.  735 ILCS 5/12-101 
et seq
. (West 2000);  
Dunn
, 174 Ill. App. 3d at 947;  R. Ostler, 
Enforcing Judgments Against Real Estate in Illinois: A Step-By-Step Guide
, 89 Ill. B.J. at 234-35.   The Illinois Supreme Court has also stated that a writ of execution must "be supported by a valid judgment and must be issued in conformity with that judgment."  
Block
, 318 Ill. at 186.  Since, as discussed above, Northwest did not have a valid assignment from Dearborn at the time the memorandum of judgment was filed, there was no judgment lien and the levy sale was improper.  Based upon that irregularity, Northwest was not a judgment creditor when the levy sale occurred and the trial court had jurisdiction to arrest that sale.  

Second, the authority relied upon by Northwest that the trial court "lost" jurisdiction to enter the May 6, 1999, order is unpersuasive.  In 
Benj. Harris & Co. v. Western Smelting & Refining Co.
, 322 Ill. App. 609, 642, 54 N.E.2d 900 (1944)
, the court, quoting 34 C.J.S., 
Judgments
 §1105 at 719, stated:

" 'Where property of the debtor is sold on execution and the sale stands, the judgment is satisfied to the extent of the net proceeds of the sale.  The judgment under which the sale is made, as distinguished from some other judgment, is extinguished by the sale on execution and the payment of the amount bid, when sufficient to cover the amount due and costs.  It is sufficient for this purpose if the money is actually collected by the sheriff or paid into court. ***  If the judgment creditor himself becomes the purchaser at the sale, the judgment is satisfied in full if he bids the whole amount due him, otherwise, 
pro
 
tanto
.' "  
Harris
, 322 Ill. App. at 642.  

Harris
 does not address the question of whether a court has jurisdiction to arrest a judgment after the execution of a levy sale.  In addition, the instant sale was not allowed to stand.  It was properly arrested because there was no valid judgment.  Thus, Northwest's claim that the judgment had been satisfied or extinguished is flawed because Northwest had no judgment upon which to execute at the time of this sale. 

The other authority relied upon by Northwest is equally unpersuasive.  In 
Wilder v. Finnegan
, 267 Ill. App. 3d 422, 423, 642 N.E.2d 496 (1994), which involved a tax sale, the appellate court found that the trial court had jurisdiction and the authority to order the issuance of a tax deed for certain property which ultimately was conveyed to the defendants.  We fail to see how this case is helpful to Northwest.  

Ridgewood Industries, Inc. v. Ridgewood Industries U.S.A., Inc.
, 575 F. Supp. 244, 244-45 (N.D. Ill. 1983), involved a judgment where the defendants were required to pay the plaintiff a certain amount in damages.  The defendants, who were the judgment debtors, claimed that the assets sought by the plaintiff were not their property or were not in their possession.  The federal district court found that given the defendants' claim regarding these assets, it had jurisdiction to enforce the plaintiff's judgment and to enjoin all persons from making or allowing any transfer of the subject property until the judgment creditor was allowed to conduct a hearing to discover assets under the Illinois statutory citation procedure.  
Ridgewood Industries
, 575 F. Supp. at 244-45.  With regard to jurisdiction, the court specifically stated, "[i]t is settled that a court with jurisdiction over a lawsuit has jurisdiction to enforce the judgment it has rendered in that suit; our jurisdiction in this matter thus continues until the judgment is satisfied [Citation]."  
Ridgewood Industries
, 575 F. Supp. at 244-45.  

Ridgewood Industries
 actually supports jurisdiction here because it holds that a trial court has jurisdiction to enforce a judgment it has rendered in that suit.  The judgment originally held by Dearborn was rendered by the trial court in this case. 

Northwest also relies upon 
United States ex rel. Riggs v. Board of Supervisors of Johnson County
, 73 U.S. (6 Wall.) 166, 187, 18 L. Ed. 768, 773 (1868), where the United States Supreme Court stated "the jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied."  Relying upon this language, Northwest concludes that once the levy sale was conducted and the judgment was satisfied in this case, the court "lost" jurisdiction over the judgment.  

Riggs
 does not support Northwest's contention either because it did not involve the question of whether the court had jurisdiction over a levy sale like the one here.  Further, as discussed above, the judgment in this case was not satisfied because it was set aside. 

Finally, r
elying upon 
Resolution Trust Co. v. Ruggiero
, 994 F.2d 1221, 1225 (7th
 Cir. 1993), Northwest argues that, "once the judgment debtor is discovered to have real estate, the judgment creditor may levy upon that asset without obtaining further order of court."  However, this argument is based on Northwest's claim that it was a judgment creditor despite the fact that the assignment was invalid at the time the memorandum of judgment was filed. 

Northwest also contends that a judgment cannot be arrested once it is extinguished and that the trial court improperly used section 2-1204 of the Illinois Code of Civil Procedure for arresting a levy on a 3½-year-old judgment.  735 ILCS 5/2-1204 (West 2000).  Section 2-1204 provides, in pertinent part: 

"If judgment is arrested pursuant to a post-trial motion for any defect in the record, the plaintiff need not commence his or her action anew.  If appropriate, the court shall order new proceedings."  735 ILCS 5/2-1204 (West 2000).  

Based on the above language, Northwest claims that the trial court exceeded its authority by arresting the judgment and levy under section 2-1204 because the statute does not give the trial court power to arrest a levy.  Further, it claims that the statute is limited to post trial motions and that Desai's motion to set aside the sheriff's sale was clearly not a post-trial motion under section 2-1204. 

We also reject this argument because we have already concluded that the trial court had jurisdiction to set aside this levy sale for "noncompliance with statutory provisions."  
Craddick
, 306 Ill. App. 3d at 464.  Further, although Dearborn's judgment might have been 3½-year-old, Northwest did not acquire the rights of the original judgment holder (Dearborn) until the valid assignment had been executed at the end of April 1999.  Thus, it is also clear that the trial court properly arrested or stopped execution on these judgment proceedings as to Northwest.    
 

We next address whether Judge Cox properly tolled the  redemption period under the order entered May 6, 1999.   Because this question involves construction of the redemption statute, a question of law, we review it 
de novo
.  
Northwest Diversified
, 341 Ill. App. 3d at 33. 

Northwest claims that the redemption statute does not authorize tolling of the redemption period.  735 ILCS 5/12-122 (West 2000).

We note, however, that the statute neither prohibits tolling nor  refers to tolling.  If the legislature had intended to prohibit tolling of the redemption period, it could have expressly done so.  An appellate court may not read into a statute exceptions, limitations, or conditions not expressed by the legislature.  
Gonzalez v. Profile Sanding Equipment, Inc.
, 333 Ill. App. 3d 680, 695, 776 N.E.2d 667 (2002).  Therefore, we cannot conclude, as Northwest suggests, that the redemption statute does not allow for tolling under any circumstance.  Under the circumstances in this case, we conclude that the trial court properly tolled the redemption period during the course of these proceedings.

Further, as we have discussed in detail above, courts have allowed redemption, even after the redemption period has expired, when the judgment lien statute was not strictly followed.  
Northwest Diversified
, 341 Ill. App. 3d at 38; 
Block
, 318 Ill. at 187.  Therefore, even if section 12-122 would not permit tolling in this case, because we have already found that the judgment lien statute was not strictly complied with and the Sheriff's sale was improper, the trial court had the authority to permit Desai to redeem the property regardless of whether the redemption period had expired.

We next consider Northwest's claim that Desai waived his right to redemption by accepting and cashing the $7,500 homestead exemption check he received from the Sheriff in connection with the levy sale.   

As a preliminary matter, we note that "[a] waiver is a voluntary relinquishment of a known right, claim or privilege [citation], whereas an equitable estoppel may arise even though there was no intention on the part of the party estopped to relinquish any existing right."  
Vaughn v. Speaker
, 126 Ill. 2d 150, 161, 533 N.E.2d 885 (1988).  Further:

"An 'equitable estoppel' requires proof of no less than six elements: (1) words or conduct amounting to a misrepresentation or concealment of material facts on the part of the party allegedly estopped; (2) knowledge by the party allegedly estopped at the time the representations were made that the representations were untrue; (3) lack of knowledge by the party asserting estoppel at the time the representations were made and at the time they were acted upon that the representations were untrue; (4) the party allegedly estopped must intend or reasonably expect the representations to be acted upon; (5) good faith reliance on the representations by the party asserting estoppel to its detriment; and (6) prejudice to the party asserting estoppel if the party allegedly estopped is permitted to deny the truth of the representations. [Citation.]" 
Williams & Montgomery, Ltd. v. Stellato
, 195 Ill. App. 3d 544, 552, 552 N.E.2d 1100 (1990).

Prejudice to the other party is one of the essential elements of estoppel.  
Vaughn
, 126 Ill. 2d at 161.  

With regard to waiver, we note that "[a]n implied waiver may arise from either of two situations: (1) an unexpressed intention to waive can be clearly inferred from the circumstances; or (2) the conduct of one party has misled the other party into a reasonable belief that a waiver has occurred."  
Batterman v. Consumers Illinois Water Co.
, 261 Ill. App. 3d 319, 321, 634 N.E.2d 1235 (1994).  "Whether sufficient facts have been presented to establish a waiver is a question of law."  
Batterman
, 261 Ill. App. 3d at 321.  Our standard of review on this question is 
de novo
.  

In the instant case, Northwest argues that Desai has waived, or should be equitably estopped from asserting, his right to redemption because Desai's acceptance of the homestead exemption check signified his acceptance of the levy sale; Desai never tendered enough money to satisfy the judgment; and by filing his motion to allow payment of judgment dated August 18, 2000, Desai "implicitly" admitted that Northwest was the proper assignee of the judgment and that the levy sale was proper. 

We reject the equitable estoppel argument made by Northwest because Northwest has not argued any of the six elements required for equitable estoppel, including the essential element of how it was prejudiced by Desai's acceptance of the $7,500 homestead exemption check.  It is well established that contentions without argument or citation to authority do not merit consideration on appeal and are properly waived under Supreme Court Rule 341.  
Fuller v. Justice
, 117 Ill. App. 3d 933, 942-43, 453 N.E.2d 1133 (1983); 188 Ill. 2d R. 341(e)(7).   

Northwest's "waiver" argument is also easily dismissed.  Section 12-912 of the Illinois Code of Civil Procedure provides that "the officer may advertise and sell the premises, and out of the proceeds of such sale pay to such judgment debtor the sum of $7,500, and apply the balance to the judgment."  735 ILCS 5/12-912 (West 2000).  Northwest correctly states that owners of property cannot recover the price of their homestead and occupy the property at the same time.  
Starczewski v. Toman
, 296 Ill. App. 602, 608, 16 N.E. 2d 932, 935 (1938).  However, without citing to any authority, Northwest then concludes that, "when a judgment debtor accepts the homestead check from the sheriff and negotiates the check, the only logical conclusion is that the judgment debtor acknowledged the sale."  Thus, we could also reject any suggestion that Desai "waived" his right to redeem because, again, Northwest has not argued its contentions or provided citation to relevant authority.  
Fuller
, 117 Ill. App. 3d at 942-43.  However, we choose to examine whether an implied waiver has been established under these facts.

The facts show that Northwest did not pay Desai's homestead exemption $7,500 to the Sheriff at the time of the levy sale.  To the contrary, a letter dated June 21, 2000, from Northwest's counsel indicates that on that date, Northwest intended to pay the Sheriff $7,500 for Desai's homestead exemption.  The record demonstrates that a check issued by the Sheriff on July 14, 2000, and then re-issued on September 25, 2000, was cashed by Desai on September 26, 2000.  Desai responds that he only cashed the check for the purpose of returning the money to Northwest in compliance with Judge Cox's order of September 20, 2000, which required Desai "to pay 10% interest on the $25,159 bid amount from April 19, 1999 to May 6, 1999 and from May 24, 2000 to today's date."  Further, Judge Cox's order of September 20, 2000, indicated that Northwest was judicially estopped from denying Desai the opportunity to pay the judgment when it refused to accept payment of $17,659.17 when the assignment was being challenged.

Based on these facts we reject Northwest's conclusion that Desai acknowledged the sale because he accepted the homestead check from the Sheriff and negotiated it.  Desai was not even issued his homestead exemption check until 17 months after the levy sale.  He didn't cash the check until September 26, 2000, pursuant to the September 20, 2000, order by the court.  In his motion to reconsider filed March 9, 2001, Desai claimed that he did not cash the check until the trial court ordered Northwest to accept the redemption payment on September 20, 2001.  By cashing the check, Desai did not acknowledge the validity of the levy sale; instead, he was trying to redeem his property by making payment to Northwest.

Relying upon 
Muir v. Mierwin
, 385 Ill. 273, 52 N.E.2d 801 (1944), Northwest also suggests that "a party attempting to redeem must render or pay the amount required by the statute and the payment of a smaller sum than the amount fixed by [the redemption] statute is fatal to the redemption proceedings."  As we noted above, the redemption statute states, in relevant part: 

"Any defendant *** interested in the premises, *** may, *** within 6 months from the sale, redeem the real estate so sold by paying to the purchaser thereof *** the sum of money for which the premises were sold or bid off, with interest thereon at the rate of 10% per annum from the time of such sale, whereupon such sale and certificate shall be null and void."  735 ILCS 5/12-122 (West 2000).   

Northwest stretches the decision in 
Muir
.  In 
Muir
, the court found that the officer of the circuit court was without authority to issue a certificate of redemption "for the adequate reason that the amount tendered was insufficient," because the four persons who maintained respective undivided interests in the property tendered their fractional portion of the purchase price together with interest at 5%, instead of interest at 6% as required by the statute.  
Muir
, 385 Ill. at 276.  
Muir
 does not hold that payment of a smaller sum than the amount fixed by statute is "fatal" to the redemption proceedings.  Further, 
Muir
 does not stand for the proposition that payment of a smaller sum than the amount required by the statute amounts to a waiver of the judgment debtor's right to redeem.     

The facts indicate that Desai made several attempts to satisfy the judgment.  Desai paid Dearborn $5,000 on January 4, 1999, and $2,000 on February 15, 1999, in partial satisfaction of the judgment.  These payments were accepted by Dearborn.  Dearborn's counsel then challenged the validity of the assignment on the grounds that Brooks did not have the authority to assign the judgment and that Northwest paid no consideration for it.  On April 19, 1999, Swiatek's affidavit indicates that Desai attempted to satisfy the judgment for $10,000, which was refused by the Sheriff.  In his motion to allow payment of judgment filed August 18, 2000, Desai alleged that he attempted to pay the judgment in May, 1999, but the Sheriff refused to accept it.  In October 1999, Desai attempted to pay Northwest's attorney the judgment, including interest.  Northwest rejected Desai's payoff on the basis that the court's May 6, 1999, order arrested the judgment until the rule to show cause was resolved.  On September 28, 2000, the record shows, Desai sent Northwest a cashier's check for $26,159.66 by express mailing the check to Northwest.

As we noted above, Northwest provides no authority that payment of a smaller sum than the amount required by the statute amounts to a waiver of the judgment debtor's right to redeem.  Thus, the fact that Desai attempted to pay the judgment in part or in full does not amount to a waiver of his redemption right.

Moreover, we do not conclude that by filing a motion to allow  payment, Desai "implicitly" admitted that the assignment of judgment from Dearborn to Northwest was valid or that the levy sale was valid.  Instead, the record indicates Desai made several attempts  to satisfy the judgment and to get his property back.  The circumstances here do not show Desai's express intention to waive his right to redeem the property or that Desai misled Northwest into a reasonable belief that a waiver of his right to redeem had occurred.  
Batterman
, 261 Ill. App. 3d at 321.  We do not find an implied waiver of Desai's right to redeem the property under these facts. 

We also reject Northwest's argument that, once the Sheriff's deed issued, Desai was required to bring a new suit to contest the levy.  This argument was raised for the first time in Northwest's reply brief, a violation of Supreme Court Rule 341(e)(7), which prohibits raising an argument for the first time in a reply brief.  
International Harvester Credit Corp. v. Helland
, 151 Ill. App. 3d 848, 854, 503 N.E.2d 548 (1986);  177 Ill. 2d R. 341(e)(7).  

Finally, we are not persuaded by Northwest's argument that the trial judge abused her discretion in allowing Desai to tender the exact bid amount as the amount necessary to redeem.  The statute is clear that, to redeem, a defendant must pay the bid amount plus interest thereon at the rate of 10% 
per annum
.  735 ILCS 5/12-122 (West 2000).  Judge Cox's amended order of October 2, 2000, ordered Desai to pay 10% interest on the $25,169.16 bid amount, "from April 19, 1999 to May 6, 1999 and from May 24, 2000 to today's date."  Defendant ultimately paid $26,159.66, approximately $990 more than the bid amount.  The October 2, 2000, order makes clear that Judge Cox broke down the 10% 
per
 
annum
 interest requirement and applied it to certain periods, April 19, 1999, to May 6, 1999, and from May 24, 2000, to October 2, 2000.  While we are unsure how the trial court calculated the interest, it is clear that interest was applied because Desai paid more than the bid amount to redeem the property.  We will not disturb the trial court's finding on this matter.    

Based on the above, we affirm the trial court's orders of May 11, 2001, and May 23, 2001.

Affirmed.

CAHILL, P.J., and BURKE, J., concur.

FOOTNOTES
1:  The redemption statute allows any defendant to redeem the  real estate sold at a levy sale within six months after the sale by paying the purchaser the sum of money for which the premises was sold or bid off, plus interest at the rate of 10% per 
annum
 from the time of the sale.  735 ILCS 5/12-122 (West 2000).   

2:  The legislature has since changed the law with regard to how levy sales are approved.  Effective January 1, 2001, a report supporting the validity of the sale and court confirmation of the sale are required.  See 735 ILCS 5/12-144.5 (West 2002).