DOROTHY AGNEW, Plaintiff-Appellant, *v.* NOLIN BROWN *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 80-1139

Opinion filed May 26, 1981.

Kantor & Apter, Ltd., of Chicago, for appellant.

Barry Holt, of Chicago, for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Prior to June 1979, defendants, Nolin Brown and Floyd Jennings, were purchasing by means of articles of agreement for a deed, a property located at 73d Street and Wentworth Avenue (the Wentworth property) in Chicago, Illinois. When the defendants became delinquent in their payments to the contract seller, they sought assistance from plaintiff, Dorothy Agnew. Defendants executed assignments of their interest in the Wentworth property, and plaintiff paid the outstanding balance on the existing real estate contract. Plaintiff then owned the Wentworth property. When defendants refused to permit plaintiff to collect rents from the tenants of the building or to allow plaintiff to enter the property, plaintiff sued for injunctive relief in the circuit court of Cook County.

Defendants counterclaimed, alleging that they had executed the documents to provide security for a loan, and not to convey the property to plaintiff. Defendants contended that the trial court should void the assignments and the quit-claim deed which they had purportedly executed. Defendants also maintained that plaintiff's actions amounted to fraud, defeating her claim of rightful ownership. The trial court found that the transaction lacked consideration and that defendants continued as contract purchasers of the Wentworth property.

The Wentworth property consists of three stores and 10 apartments. Under the articles of agreement executed in August 1969, defendants agreed to purchase the property for $22,950. As of May 1979, there remained a balance due of approximately $6000. Defendant Brown testified at trial that in his estimation the property was currently worth $33,000.

Plaintiff's first witness was Ralph Goren, the attorney who serviced the articles of agreement between defendants and the original contract seller. Goren testified that defendants' payments began in September 1969. By 1973, defendants were one payment in arrears. The arrearage comprised two payments in 1974, five payments in 1975, nine payments in 1976, 13 payments in 1977, and 18 payments in 1978. Goren testified that, at the same time, the escrow account for the Wentworth property showed mounting deficiencies. Toward the end of 1978, Goren corresponded with one of the defendants to warn that if the payments on the contract were not made current, the sellers would terminate the agreement. Brown informed him that Mrs. Agnew was willing to advance money to bring the contract current. On June 25, 1979, Goren received $5108.50 (the outstanding contract balance of $6195.76, less the escrow balance of $1087.26) from plaintiff. When Goren received the assignments of defendants' interests in the articles of agreement, signed by defendants, Goren made out a trustee's deed to plaintiff. On cross-examination Goren acknowledged that although the defendants were perpetually delinquent on the contract payments, legal action had not been undertaken to foreclose on the agreement.

Ora Manning, employed by plaintiff as a barmaid at Dorothy's Blue Fox Lounge, testified to a series of meetings between defendant Brown and her employer, Dorothy Agnew, at the lounge. Dorothy Agnew testified that Brown came to her with the complaint that he was losing his building. He asked her to buy the building and suggested that he would then buy it back at a later date. She had her attorney prepare papers of transfer and gave the papers, assignments of interest, and quit-claim deeds to defendants to sign. These papers were returned to her by defendants with their signatures attached.

During direct examination, plaintiff was asked whether she told

defendant Brown that she was going to loan him money on the property in return for his assignment of interest. Plaintiff responded, "Mr. Brown never asked me for any money." In later testimony, plaintiff asserted that she never intended to loan defendants any money or to allow defendants to use the property as security for a loan. On cross-examination, plaintiff explained that Brown had no special relationship with her. Rather, Brown was just another businessman whom she would occasionally see in the neighborhood. She testified that she warned Brown that if she bought the building she would not sell it back to him. She also acknowledged that she was aware that she was buying the building for $5100, but that she was unaware of its actual worth when she completed the transaction. Defendants' attorney then asked:

"What did Mr. Brown tell you that he wanted you to have the building instead of Mr. Goren? [Sic.]

Plaintiff: He said he would rather me to have the building than anybody. He didn't say who.

Q: And you don't know any reason why he would rather see you have the building rather than anybody, do you?

A: No, no.

Q: And you say that Mr. Brown didn't ask you for anything in addition to the money to pay the contract, is that right?

A: No, he did not."

Defendant Brown testified on his own behalf. He stated that Goren had not threatened him with legal action for nonpayment. Accordingly, he did not feel threatened with imminent foreclosure at the time of his dealings with plaintiff. When he solicited the loan from plaintiff, he believed that the arrangements would be for $6000 to pay off the contract, $6000 to pay his immediate debts, and $8000 at a later time. The loan, therefore, would amount to $20,000 and would be secured by plaintiff's holding title to the Wentworth property. Jennings testified that he was the silent partner. Although he did not speak directly to plaintiff, he understood that the transaction was to be structured as Brown described.

James Haddon testified that he had been Brown's attorney for at least 15 years. Brown first called him about the Wentworth property transaction in May 1979. On June 5, 1979, Brown came to Haddon's office. Brown explained that he had signed certain documents to receive a loan of approximately $20,000. Brown informed Haddon that other documents detailing the terms of the loan would need to be prepared. Haddon testified that he called plaintiff's attorney and asked him to hold any actions on the transaction in abeyance until the parties' intentions were clarified. Instead, after a number of conversations, plaintiff's attorney informed Haddon that he had previously recorded the quit-claim deeds

and the assignments of purchaser's interests in the Wentworth property. The two attorneys ceased discussions at that point.

The dispute was tried to the bench and, during closing arguments, the trial judge availed himself of the opportunity to clarify the evidence. Four times, the trial judge asked plaintiff's attorney to identify what evidence existed of consideration. The attorney first admitted that cash did not constitute the consideration. He then suggested that speculation might lead to some reason for defendants' action, perhaps the fact that plaintiff and the defendants were all merchants "in the neighborhood, * * * acquainted with each other over the years, there are many possibilities * * *." Plaintiff's attorney admitted, on the court's further questioning, that there was no testimony that plaintiff promised or that defendants expected special treatment. In response to the court's third attempt to have plaintiff's attorney specify the consideration that passed between the parties, the attorney responded:

> "We have made, as it's obvious to the Court and to everybody else, no affirmative showing of any consideration *per se* having passed between the parties.

> The testimony from Ms. Agnew only was that Mr. Brown approached her expressing his fears that he was going to lose the building and preferring that she have it rather than the contract purchasers [*sic*] resuming whatever ownership rights they had and selling to a third party."

The trial judge found that by virtue of her purchase of the trustee's deed to the Wentworth property, plaintiff was the owner of legal title to the property. He further found that although the assignments recited "For value received" no actual consideration had passed between the parties. The assignments and quit-claim deeds were thus ineffective to transfer defendants' interests to plaintiff. Defendants were accordingly entitled to possession. From this order, plaintiff appeals.

Appellant herein asks this court to reverse the decision of the trial court. The trial court's decision, however, is supported by the law and, even more fundamentally, by common sense.

■■ The Restatement of Contracts defines consideration for a promise as "an act other than a promise, or a forbearance, or the creation, modification or destruction of a legal relation, or a return promise, bargained for and given in exchange for the promise." (Restatement of Contracts §75 (1932).) The comment to this section notes: "Recital of a payment not in fact made, but stated to have been made as consideration, the statement being inserted merely to make a transaction look like a bargain when in fact it was not, does not suffice (see §82)." (Restatement of Contracts §75, comment b, at 81 (1932).) Reference to section 82 of the Restatement of Contracts provides further clarification: "Adequacy of consideration is not required (§81). But a recital of consideration that is not actually given

is insufficient." (Restatement of Contracts §82, comment c, at 93 (1932).) While plaintiff correctly points out that the courts of Illinois are disinclined to question the adequacy or sufficiency of consideration (see *Sta-Ru Corp. v. Mahin* (1976), 64 Ill. 2d 330, 338, 356 N.E.2d 67; *In re Estate of Cohan* (1978), 59 Ill. App. 3d 963, 376 N.E.2d 628), a different rule attends where there is some doubt whether there was *any actual* consideration. *Cf. Nathan v. Leopold* (1969), 108 Ill. App. 2d 160, 168, 247 N.E.2d 4 (issue is not to determine adequacy of consideration, but rather to find its existence).

■■ An offer, an acceptance, and consideration are the basic elements of a contract. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 329, 371 N.E.2d 634; see *Nyman v. Washington State Bank* (1980), 86 Ill. App. 3d 781, 783, 408 N.E.2d 471.) Lack or failure of consideration goes to the actual validity of contract formation (see *O'Neill v. De Laney* (1980), 92 Ill. App. 3d 292, 297, 415 N.E.2d 1260), and cannot be swept aside by plaintiff's argument that a court typically does not review adequacy of consideration. Thus, absent some indicia of actual consideration, a contract will be held invalid by the courts. (See 1 Corbin on Contracts §127, at 546 (1963).) This simple rule ordains the result in the instant case.

■■ Although plaintiff's counsel's vague, equivocal answers to the trial court's questioning during closing arguments might alone dispose of the argument that there was actual, valid consideration for the transfer, even the conjectural "benefit" to defendants suggested by plaintiff to constitute consideration is so grossly insufficient as to comprise no consideration at all. Plaintiff argues that defendant Brown's wish that plaintiff, rather than the contract seller, have the Wentworth property provides evidence of consideration. Plaintiff speculates that defendant felt perhaps that his tenancy would be on more favorable terms under plaintiff. Casting to one side for the moment the singular absurdity of an argument that defendants felt they would be in a better position as rental tenants of the Wentworth property rather than as purchasers thereof with a substantial equity, plaintiff's speculations are still insufficient to substitute for the element of consideration. Initially, we note that neither plaintiff nor defendants testified to any special relationship or to any proposed favorable post-transaction treatment. Secondly, evidence of motive for a transfer does not substitute for the necessary element of consideration in a contract. See *Tcherepnin v. Franz* (N.D. Ill. 1978), 457 F. Supp. 832, 838; see also *Meixner v. Western Live Stock Ins. Co.* (1916), 203 Ill. App. 523 (abstract).

■■ Plaintiff has supplied no evidence of actual consideration other than vague suggestions of defendants' possible motives. We note that defendants denied plaintiff's theories of possible "benefit" and insisted that they intended the assignment of a security interest in the Wentworth property

in exchange for a loan from plaintiff. There being no true bargain or consideration, the assignments and quit-claim deeds purporting to transfer the Wentworth property to plaintiff were properly held invalid by the trial court. The judgment of the trial court is therefore affirmed.

Affirmed.

HARTMAN, P. J., and DOWNING, J., concur.