2023 IL App (1st) 221467-U

No. 1-22-1467

Second Division
December 5, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a Christiana Trust, not in its individual capacity but solely as Trustee of the Brougham Fund I Trust [successor in interest to WELLS FARGO BANK, N.A.], | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | No. 11 CH 25112 |
| v. | ) ) | |
| MALCOLM D. HERZOG, | ) ) | Honorable William B. Sullivan |
| Defendant-Appellant. | ) | Judge, Presiding. |

---

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Appeal is not moot despite appellant's failure to obtain a stay because appellant has requested relief other than the sold property. The circuit court properly granted summary judgment in favor of Wilmington Savings where the release of the mortgage was not supported by consideration and foreclosure of the valid mortgage on Herzog's property was warranted. The circuit court's confirmation of sale and

entry of deficiency judgment was not an abuse of discretion. The circuit court is directed to enter an order expunging the invalid release from the public record.

¶ 2     In this mortgage foreclosure action, defendant-appellant Malcolm D. Herzog appeals from orders of the circuit court of Cook County entering summary judgment in favor of plaintiff-appellee Wilmington Savings Fund Society, doing business as Christiana Trust, not in its individual capacity but solely as Trustee of the Brougham Fund I Trust [successor in interest to Wells Fargo Bank, N.A.] (Wilmington Savings), confirming the sale of the property, and entering a deficiency judgment against Herzog in the amount of $1,574,091. On appeal, Herzog argues that the circuit court erred in granting summary judgment in favor of Wilmington Savings because the release of the mortgage barred its foreclosure and Wilmington Savings did not provide evidence of fraud, duress, illegality, or mutual mistake. He also argues that the court erred in confirming the foreclosure sale and entering a deficiency judgment without an evidentiary hearing where the amount was patently inequitable. For the reasons that follow, we affirm and remand with directions.

¶ 3                              I. BACKGROUND

¶ 4     Preliminarily, we note that, despite the more than a thousand pages of record, Herzog's statement of facts is comprised of less than three pages. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020) (Statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment[.]"). Those three pages provide almost none of the procedural history of the case and contains improper argument throughout. Unfortunately, Wilmington Savings did not provide its own statement of facts, despite the deficiency in Herzog's brief. See Ill. S. Ct. R. 341(i) (eff. Oct. 1, 2020) (Statement of facts need not be included in appellee's brief "except to the extent that the presentation by the appellant is deemed

unsatisfactory."). Nonetheless, we choose neither to strike the statement of facts nor dismiss the appeal. We will, however, disregard the noncompliant portions of Herzog's statement of facts. See *Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 8. The following statement of facts, therefore, is based on the record filed on appeal.

¶ 5     The property that is the subject of these foreclosure proceedings is located at 9111 West 126th Street in Palos Park, Cook County, Illinois. On September 8, 2006, Herzog executed a mortgage in the amount of $1,499,999. The original mortgagor, Wells Fargo Bank, N.A. (Wells Fargo), recorded the mortgage with the Cook County Recorder of Deeds on October 12, 2006.

¶ 6     The loan was twice modified, first on March 31, 2008, and a second time on April 3, 2008. After the second modification, the amount of indebtedness was $1,728,798.05. Significantly, the release of the original mortgage was recorded, five days later, on April 8, 2008.

¶ 7     In late 2010, Herzog failed to make the necessary mortgage payments and the note and mortgage went into default.

¶ 8     Subsequently, on July 18, 2011, Wells Fargo filed its initial complaint in this action.

¶ 9     Between 2011 and 2017, Wells Fargo continued to pursue its foreclosure action against Herzog. In 2016, Wells Fargo assigned Herzog's mortgage to Wilmington Savings. On Wells Fargo's motion, Wilmington Savings was substituted as plaintiff. Attached to the motion was an exhibit showing the corporate assignment of Herzog's mortgage which reflected the mortgage as "ReRecorded" on February 22, 2016. The court granted the motion on August 15, 2017.

¶ 10     On October 16, 2017, Wilmington Savings filed several non-dispositive motions, including a motion for summary judgment.

¶ 11     Following briefing on Wilmington Savings's motion for summary judgment on January 18, 2018, Herzog filed a motion and was subsequently granted leave to file an affirmative defense,

namely release of the mortgage. Attached to the motion was an exhibit showing that, on April 18, 2008, Wells Fargo executed a "Release of Mortgage or Trust Deed," recorded on May 8, 2008, with the Cook County Recorder of Deeds. The release stated that Wells Fargo "for and in consideration of the payment of indebtedness" secured by Herzog and "the cancellation of all the notes thereby secured, and the sum of one dollar, "do hereby REMISE, RELEASE, CONVEY, AND QUITCLAIM unto [Herzog] *** all the right, title, interest, claim, or demand *** acquired in, through or by a certain Mortgage/Trust Deed, dated September 8, 2006[.]" The document was signed by Milly A. Thompson, as assistant vice president of Wells Fargo.

¶ 12    On March 2, 2018, Wilmington Savings moved to amend its complaint, the version of which is the subject of this appeal. Count I requested, *inter alia*, foreclosure on the mortgage. Count II requested a judgment declaring the validity of the mortgage and expungement of the release from the public record. The complaint stated that Wilmington Savings's predecessor "executed an erroneous 'Release of Mortgage or Trust Deed' dated April 18, 2008 and recorded April 8, 2008[.]" The subject mortgage "was re-recorded February 22, 2016 *** to reflect that the subject mortgage is a valid and subsisting lien [against] the subject property" and Herzog continued to make payments on the note and mortgage "after the date of the erroneous Release of Mortgage[.]" Wilmington Savings requested that the circuit court declare the mortgage as valid, expunge the release of mortgage, and award such other relief as "fit and proper" under the circumstances.

¶ 13    Attached to the complaint was an affidavit of rescission dated May 4, 2015, and signed by Elizabeth Ripka, vice president of loan documentation of Wells Fargo. Ripka averred that the release should be expunged as "null and void" because there is still a "valid and existing lien against the subject property."

¶ 14    In his answer to the amended complaint, Herzog stated "affirmatively that [Wilmington Savings] lacks any valid and subsisting instrument that is subject to foreclosure," "all indebtedness secured thereby was released" by the release of mortgage, and the re-recording of the mortgage was not authorized or effective. He denied that the affidavit of rescission was genuine but "admit[ted] that he made payments to Wells Fargo" after the recording of the release. Finally, he requested that both counts be dismissed with prejudice.

¶ 15    Between 2018 and 2021, Herzog filed two motions to dismiss, as well as a motion for summary judgment, all of which were denied. During that time, the depositions of John Gresham, a corporate representative of BSI Financial Services (BSI), and Herzog were taken.

¶ 16    Gresham testified that BSI is the servicer for Wilmington Savings. BSI accepts payments from borrowers, sends out mortgage statements, takes inquiries, and assists with loss mitigation. Gresham was responsible for reviewing loans that fall into default and attending trials, mediations, and depositions in foreclosure cases. He testified that he had not seen the agreement between Wells Fargo and Wilmington Savings assigning the subject mortgage. He did not personally contact Wells Fargo to see if there were any additional documents related to this mortgage. He also did not contact any persons identified in the release document or the affidavit of rescission and he had no knowledge as to the error made in the release of the mortgage. As far as he knew, no one at BSI ever investigated who was involved in the execution of those documents. He further testified that there was nothing on the face of the release that would suggest that it was made in error.

¶ 17    Herzog testified that he had other "obligations" with Wells Fargo, in addition to the one at issue, and he did not recall making mortgage payments to Wells Fargo for the property at issue. He testified that he believed that he did not have a mortgage on the property at issue because "it was released as well as the debt." He further testified that he did not recall any of the specifics

surrounding the execution of the release. As to the continued payments to Wells Fargo after the release, Herzog stated that he did not recall making any payments after March 26, 2008, but he had other obligations with Wells Fargo and any payments made should have been applied to his other mortgage.

¶ 18    During his deposition, the following colloquy occurred:

"Q. Did you receive a form 1099-C for this property after the release of mortgage was recorded in May of 2008 from Wells Fargo Bank?

A. I do not remember.

* * *

Q. When people have loan forgiveness against them, it gets taxed a certain way. When people make monthly payments or pay off a debt, it gets taxed in an entirely different way. Do you know how that -- do you know what actions or steps you reported to the IRS relating to the forgiveness of the $1.5 million?

A. No recollection.

Q. Do you know if it was treated as personal income?

A. No recollection.

Q. Do you recognize if you took $1.5 million of loan forgiveness and didn't treat it as earned income it could have tax consequences?

A. No recollection."

¶ 19    On June 1, 2021, Wilmington Savings filed a motion for summary judgment. Therein, Wilmington Savings asserted that Herzog admitted that the mortgage was a valid lien by failing to deny the allegation in his answer. Further, Herzog's admission that he continued to make payments

on the mortgage after the release was executed is evidence that the release was in error. It also contended that those continued payments evidenced that Herzog had not paid the entire indebtedness at the time the release was executed. Additionally, it maintained, Herzog's deposition showed that he had no evidence of valid consideration for the release because he could not recall any of the details of the release. It further pointed to Wells Fargo's re-recording of the mortgage as evidence of the invalidity of the release. Finally, Wilmington Savings asserted that Herzog's indebtedness still existed and had Herzog paid off the loan to secure the release, no amount would be owed. Attached to the motion was an affidavit from Cheryl Mallory, an assistant vice president of BSI, attesting that, as of January 8, 2021, the amount due under the mortgage was $2,481,266.62.

¶ 20    Simultaneously, Wilmington Savings filed a motion to appoint a selling officer and a motion for judgment of foreclosure.

¶ 21    On July 15, 2021, Herzog filed his response to Wilmington Savings's motion for summary judgment. He argued that an issue of fact existed as to whether the mortgage in this action remains in existence and is subject to foreclosure. He further asserted that Wilmington Savings lacks any proof that the release was mistakenly prepared, executed, and recorded by Wells Fargo. Additionally, he claimed that evidence of unilateral mistake would be insufficient. Finally, Herzog asserted that there is no evidence of lack of consideration and that issue was never included in plaintiff's amended complaint.

¶ 22    On August 5, 2021, Wilmington Savings filed its reply, arguing that there would only be an issue of material fact if Herzog claimed that there was consideration for the release and he had evidence to support that claim.

¶ 23 The circuit court scheduled a hearing on the motion for September 28, 2021. There is no transcript of this hearing, or an acceptable substitute, in the record, in contravention of Illinois Supreme Court Rule 323(a), (c), (d) (eff. July 1, 2017). Following the hearing, the circuit court granted summary judgment in favor of Wilmington Savings and entered a judgment of foreclosure and sale. The court also appointed a selling officer.

¶ 24 On November 29, 2021, Herzog filed a motion for a stay pending appeal pursuant to Illinois Supreme Court Rule 305(b) and a motion for a finding pursuant to Illinois Supreme Court Rule 304(a), which were both denied.

¶ 25 On that same day, Herzog also filed a motion for reconsideration, containing largely the same arguments as in his response to the motion for summary judgment. On April 12, 2022, the circuit court denied Herzog's motion for reconsideration.

¶ 26 On April 19, 2022, the subject property was sold at auction for $1,088,000.

¶ 27 After the sale, Wilmington Savings filed a motion for approval of the sale and for an eviction order. Herzog objected, arguing that Wilmington Savings failed to show that the value of the collateral was less than the indebtedness and the sale was not commercially reasonable.

¶ 28 On August 30, 2022, the court approved the sale and entered a deficiency judgment of $1,574,091.18 against Herzog. The court's written order stated that all required notices were given, the sale was fairly and properly made, and justice was otherwise done.

¶ 29 This timely appeal followed.

¶ 30                                    II. ANALYSIS

¶ 31 On appeal, Herzog argues that the circuit court erred in granting summary judgment in favor of Wilmington Savings because the release of the mortgage barred its foreclosure and

Wilmington Savings did not provide evidence of fraud, duress, illegality, or mutual mistake. He also argues that the court erred in confirming the sale and entering a deficiency judgment without an evidentiary hearing where the amount was patently inequitable.

¶ 32                                          A. Mootness

¶ 33    Initially, we must address Wilmington Savings's contention that this appeal should be dismissed. Wilmington Savings asserts that Herzog's appeal of the circuit court's judgment is moot because he failed to obtain a stay of the judgment as required under Illinois Supreme Court Rule 305(k) (eff. July 1, 2017).

¶ 34    Herzog, in his reply, contends that, if this court reverses the foreclosure judgment or, in the alternative, vacates the deficiency judgment, it will have "provided highly substantial relief regardless of the inability of [Herzog] to recover the foreclosed property." He further asserts that "he will also get restitution for the value he lost by reason of the improper foreclosure and sale." Finally, he argues that there is no precedent for declaring an appeal moot that involves a deficiency judgment, or "where money was at stake."

¶ 35    Before proceeding, we note that while this appeal was pending, Wilmington Savings filed a motion to dismiss the appeal as moot pursuant to Illinois Supreme Court Rule 305(k). Herzog filed an objection. A different panel of this court denied the motion.

¶ 36    "The denial of a motion to dismiss an appeal is not final and '[t]he panel that hears the appeal has an independent duty to determine whether it has jurisdiction and to dismiss the appeal if it does not.' " *Rocha v. FedEx Corporation*, 2020 IL App (1st) 190041, ¶ 54 (quoting *In re Estate of Gagliardo*, 391 Ill. App. 3d 343, 348-49 (2009)). Therefore, despite the prior order denying the motion to dismiss, we reconsider whether this appeal is moot, pursuant to our inherent authority

to reconsider our prior rulings. See *Stevens v. Village of Oak Brook*, 2013 IL App (2d) 120456, ¶ 37 ("A court has inherent authority to reconsider and correct its rulings[.]").

¶ 37     Whether an appeal is moot is a threshold question. *Lakewood Nursing & Rehabilitation Center v. Department of Public Health*, 2015 IL App (3d) 140899, ¶ 17. "An appeal is moot if no actual controversy exists or if events have occurred that make it impossible for the reviewing court to grant the complaining party effectual relief." *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 291 (2005). "The existence of a real dispute is not a mere technicality but, rather, is a prerequisite to the exercise of this court's jurisdiction." *Id.* However, the failure to obtain a stay pending appeal, by itself, does not render an appeal moot. *In re Tekela*, 202 Ill. 2d 282, 292 (2002). Rather, where a reviewing court is not capable of granting any effectual relief to a party, the case is rendered moot. *Id.* at 292-93.

¶ 38     In cases involving property, an appeal is moot when the subject property "has already been conveyed to a third party and the party seeking possession failed to obtain a stay." *Northbrook Bank & Trust, Co. v. 2120 Division LLC*, 2015 IL App (1st) 133426, ¶ 14. Where there is no stay of judgment pending appeal, Illinois Supreme Court Rule 305(k) (eff. July 1, 2017) protects a third-party buyer from reversal or modification of a judgment regarding the subject property. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 523 (2001). As such, the protections afforded to the non-party purchaser of the subject property under Rule 305(k) prevent this court from providing any relief that would affect the disposition of the property.

¶ 39     In his notice of appeal, as well as in his opening brief, Herzog requests merely that the trial court's orders be reversed. In reply to Wilmington Savings's mootness argument, however, he asserts that because there is a deficiency judgment at issue and there is a possibility for restitution for the value he lost if the foreclosure is held to be improper, his appeal cannot be considered moot.

¶ 40    We first note that the case to which Wilmington Savings cites for support, *Deutsche Bank National Trust Co. as Trustee for Indymax Indx Mortgage Loan Trust 2006-AR25 v. Roman*, 2019 IL App (1st) 171296, is inapposite. There, although a deficiency judgment was entered against the defendant, the defendant did not on appeal request any monetary relief and this court's mootness analysis lacked any reference to that deficiency judgment. *Id.* ¶¶ 19-27. That said, it is debatable whether, but for Wilmington Savings's mootness argument, Herzog would have made a specific request for restitution. However, in the face of Rule 305(k), reversal in this case could only yield monetary relief.

¶ 41    Although not often sought in cases such as the one now before us, restitution remains a viable form of equitable relief following a foreclosure. See, e.g., *RCB Equities #3, LLC v. Jakubow*, 2021 IL App (1st) 200256-U (mootness argument rejected where defendant had no interest in return of the foreclosed property, but instead sought reversal of the deficiency judgment or an award of the sale proceeds); *Wilmington Savings Fund v. Lockhart*, 2019 IL App (1st) 181180-U (where the appellant's claim requesting the court reverse the trial court's dismissal of her quiet title claim was moot because this court could not grant any meaningful relief but her claims seeking money damages were not moot because they did not depend on the title to the property); but see *First Horizon Home Loans v. Garcia*, 2019 IL App (1st) 180092-U (where there was no evidence in the record to support defendant's claim on appeal that it was seeking money damages as opposed to reversal of the judgment of foreclosure and confirmation of the sale, defendant's appeal was deemed moot pursuant to Rule 305(k)).[1] Indeed, case law dating back over a century has

---

[1] Although *Wilmington Savings Fund v. Lockhart* and *First Horizon Home Loans v. Garcia* are unpublished and were issued prior to January 1, 2021, and therefore, not precedential, we find them persuasive. See *Osman v. Ford Motor Co.*, 359 Ill. App. 3d 367, 374 ("The fact one court has used certain reasoning in an unpublished opinion does not bar courts in this state from using the same reasoning in their decisions.").

established that, on the reversal of a foreclosure judgment, when the postjudgment sale of a property prevents a court from restoring the foreclosure defendant to the *status quo ante*, the proper remedy is to award the defendant the sale proceeds in place of the property. See *Thompson v. Davis*, 297 Ill. 11, 15-19 (1921) (where "[t]he decree of foreclosure was reversed and set aside, and the parties became entitled to be restored to their former rights as nearly as possible"); see also *Williamsburg Village Owners' Ass'n, Inc v. Lauder Associates*, 200 Ill. App. 3d 474, 483 (1990) ("[U]pon the reversal of a judgment, under which one of the parties has received benefits, he is under an obligation to make restitution.").

¶ 42    Here, Herzog has requested that we vacate the summary judgment entered and, if he is ultimately successful in the circuit court, he could seek restitution in lieu of possession of the transferred property and he would be relieved of the deficiency judgment. Because Herzog has requested relief other than possession of the property, we find that the appeal is not moot and proceed to the merits.

¶ 43                            B. Summary Judgment

¶ 44    On appeal, Herzog argues that the release issued by Wells Fargo should have barred the foreclosure and "cannot be avoided by parol evidence of lack of consideration for its issuance[.]" Herzog further contends that Wilmington Savings was required to present evidence of fraud, duress, illegality, or mutual mistake to set aside the release and it failed to present such proof.

¶ 45    Wilmington Savings responds that Herzog failed to demonstrate that the purported release created a genuine issue of material fact. It further asserts Herzog presented no evidence that he provided consideration for a release on the mortgage. Instead, it maintains, during his deposition, he repeatedly asserted that he could not recall anything about the release and he admitted to

continuing to make payments towards the outstanding indebtedness following the purported release.

¶ 46 Summary judgment is appropriate " 'where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Suburban Real Estate Services, Inc. v. Carlson*, 2022 IL 126935, ¶ 15 (quoting 735 ILCS 5/2-1005(c) (West 2020)). " 'Genuine' means there is evidence to support the position of the nonmoving party." *Pekin Ins. Co. v. Adams*, 343 Ill. App. 3d 272, 275 (2003). The court construes the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). The party moving for summary judgment is not required to prove its case or disprove the nonmovant's case, but instead may be "entitled to summary judgment by demonstrating the absence of a genuine issue of material fact." *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 31. The nonmovant may defeat a summary judgment motion by demonstrating that a question of fact does exist. *Id.* To do so, the nonmovant "must come forth with some evidence that arguably would entitle [them to] recovery at trial." *Id.* "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). Our review of the court's decision is *de novo* (*Adams*, 211 Ill. 2d at 43), meaning we perform the same analysis a trial court would perform and we afford no deference to the reasoning or the disposition of the trial court (*Johnson v. Fuller Family Holdings, LLC*, 2017 IL App (1st) 162130, ¶ 37).

¶ 47 Count I of Wilmington Savings's amended complaint alleges that the mortgage is a valid, existing lien and requests that the circuit court enter a judgment of foreclosure against Herzog. Count II, though oddly worded, seeks a declaratory judgment that the release was recorded in error and requests that the court "expunge" it from the public record. We first note that the order entered in this case states simply that the circuit court granted Wilmington Savings's motion for summary judgment. No mention is made of the release, the later filed purported recission, or expungement.[2] That notwithstanding, the inference to be drawn from the court's judgement is that the release was recorded in error and that there was, therefore, a valid lien on the property supporting summary judgment in favor of Wilmington Savings. See *Illinois Bar Association Mutual Insurance Co. v. Canulli*, 2020 IL App (1st) 190142, ¶ 19 (an order granting summary judgment that fails to expressly dispose of all issues may be appealed from where the order necessarily entailed the disposition of the remaining issues). Accordingly, we first address the validity of the release, a necessary predicate to determining whether there was a valid, existing mortgage under which Herzog defaulted and which supported the court's judgment. We reserve for later discussion Wilmington Savings's request that the release be expunged from the public record.

¶ 48 The salient facts surrounding the release are as follows. A release was executed by Wells Fargo on April 18, 2008, and recorded on May 6, 2008. The release identified Herzog as the mortgagor and identified the mortgage at issue in this case. Signed by the Assistant Vice President of Wells Fargo, the release stated that Herzog was released from the mortgage. Seven years later, Wells Fargo, just prior to assigning this mortgage to Wilmington Savings, filed an affidavit of

---

[2] Despite Herzog's failure to include a report of proceedings or acceptable substitute for the hearing on Wilmington Savings's motion for summary judgment, the lack thereof does not hinder our review of the circuit court's judgment because our review is *de novo*.

rescission with the Cook County Recorder of Deeds, which stated generally that the release was recorded in error. The mortgage was then "re-recorded" in 2016.

¶ 49 "A release is the abandonment of a claim to the person against whom the claim exists." (Internal quotation marks omitted.) *Borsellino v. Putnam*, 2011 IL App (1st) 102242, ¶ 103. Because it is a contract, a release is governed by the rules of law pertinent to contracts. *Bruner v. Illinois Cent. R. Co.*, 219 Ill. App. 3d 177, 180 (1991). Where the release in question is valid on its face, the burden of proof is on the party seeking to rescind or invalidate the release. *Meyer v. Murray*, 70 Ill. App. 3d 106, 111 (1979).

¶ 50 Herzog asserts that, for Wilmington Savings to avoid enforcement of the release, it must provide clear and convincing evidence that the release was obtained through fraud, duress, illegality, or mutual mistake. See *Vandenburg v. Brunswick Corporation*, 2017 IL App (1st) 170181, ¶ 29; *Simmons v. Blauw*, 263 Ill. App. 3d 829, 832 (1994) (citing *Frank Rosenberg, Inc. v. Carson Pirie Scott & Co.*, 28 Ill. 2d 573, 579 (1963)). However, this argument assumes that the release was, in fact, a valid contract. Wilmington Savings takes the position that the release was not a valid contract because no consideration for releasing Herzog from the mortgage was given in exchange.

¶ 51 A valid contract is one that is supported by an offer, acceptance, and consideration. *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 329 (1977); see also *Moehling v. W.E. O'Neil Construction Co.*, 20 Ill. 2d 255, 265 (1960) (stating that consideration is an essential element of a valid contract). "Consideration for a contract consists of either some right, interest, profit, or benefit accruing to one party or some forbearance, detriment, loss of responsibility given, suffered, or undertaken by the other." *Johnson v. Maki and Associates, Inc.*, 289 Ill. App. 3d 1023, 1028 (1997). "There must be a consideration for every valid contract and, if there is no consideration,

the contract is invalid." *Beyer v. Wolfe*, 228 Ill. App. 429, 435 (1923). Further, Illinois courts have expressly held that a release is invalid unless it is supported by consideration. See *Rohr Burg Motors, Inc. v. Kulbarsh*, 2014 IL App (1st) 131664, ¶ 48; *Koules v. Euro-American Arbitrage, Inc.*, 293 Ill. App. 3d 823, 832 (1998). Nonetheless, "the mere pleading of lack of consideration [does] not overcome the presumption of a valid consideration, for that can only be done by offering evidence in support of that allegation." *Stolzenbach v. Pagoria*, 71 Ill. App. 3d 863, 866 (1979). Such evidence must be of a "very clear and cogent nature." *Pedott v. Dorman*, 192 Ill. App. 3d 85, 93 (1989).

¶ 52    Initially, we point out that, despite Wilmington Savings's repeated assertions that Herzog has failed to demonstrate the validity of the release, for example, by proving consideration was given for the release, the burden is on Wilmington Savings, not Herzog, to first provide *clear and cogent* evidence that the facially valid release was invalid. See *Blaylock v. Toledo, P. & W. R. Co.*, 43 Ill. App. 3d 35, 38 (rejecting the plaintiff's position that "it was the burden of the defendant to prove the absence of those grounds which might vitiate the release" and finding fatal "the plaintiff's failure to support his charge of fraud"). If Wilmington Savings first demonstrates that the release was invalid for lack of consideration, it will have proven that it is entitled to summary judgment as a matter of law, unless Herzog comes forth with some evidence to create a genuine issue regarding consideration.

¶ 53    In his attempts to defeat Wilmington Savings's argument, Herzog cites to the principle of law that courts will typically not inquire into the sufficiency or adequacy of consideration. Sufficiency of consideration is not, however, the issue now before us. Wilmington Savings's argument is that there is a total lack of consideration in exchange for the release of the mortgage. See *White v. Village of Homewood*, 256 Ill. App. 3d 354, 358 (1993) (rejecting the defendants'

cited authority because the issue before the court was not adequacy of consideration but absolutely no consideration flowed between the parties). Thus, where the issue before the court, as it is here, is whether a valid contract was formed, a court may inquire into the actual consideration given. *Agnew v. Brown*, 96 Ill. App. 3d 904, 908 (1981) ("[L]ack or failure of consideration goes to the actual validity of contract formation [citation omitted] and cannot be swept aside by [a party's] argument that a court typically does not review adequacy of consideration."). Thus, Herzog's argument fails.

¶ 54   Herzog fares no better with his repeated assertions regarding the inadmissibility of "parol evidence" to validate the release. "The parol evidence rule, in general, operates to exclude evidence which would change or alter the expressed meaning of a written document, when such evidence concerns dealings between the parties before or at the time of making the written contract." *Davis v. Buchholz*, 101 Ill. App. 3d 388, 391 (1981). Where a contract recites consideration, "that recital is *prima facie* evidence that the grantor received the amount named." *Walton v. Malcolm*, 264 Ill. 389, 397 (1914). Although there is a presumption that consideration was given for a contract, the presumption is rebuttable, although "evidence to rebut must be of a very clear and cogent nature." *Davis*, 101 Ill. App. 3d at 392. "[F]ailure of consideration may be shown by parol evidence" where that issue is properly in dispute. *Id.* In the case before us, Wilmington Savings has explicitly challenged whether *any* consideration was given in exchange for the release of Herzog's mortgage. As such, any evidence submitted on that issue was admissible and appropriately considered by the circuit court and now this court. *In re Marriage of Tabassum and Younis*, 377 Ill. App. 3d 761, 770 (2007) (stating that whether a contract contains consideration is a question of law that we review *de novo*).

¶ 55    To support its claim that the release was recorded in error, Wilmington Savings points to Wells Fargo's 2015 affidavit of rescission, Herzog's admission that he continued to make mortgage payments after the release was recorded, and the amount of Herzog's outstanding indebtedness. Herzog contends that this evidence is insufficient to support recission of the release and Wilmington Savings's allegations are based on pure speculation.

¶ 56    Based on the evidence before us, we are not persuaded that either Wells Fargo's affidavit of rescission, which offers little, or Herzog's admission of continued payments to Wells Fargo post-release are sufficient to support Wilmington Savings's claim of no consideration. First, the affidavit, issued seven years after the release was recorded, generally states that the release was recorded "in error" and is rendered "null and void." This is hardly evidence of a lack of consideration. Second, we do not dispute that Herzog admitted to continuing to make payments to Wells Fargo. However, in his deposition, he testified that he had multiple obligations with Wells Fargo and any of his payments could have been made for the purpose of a mortgage other than one at issue here. As such, neither of these facts constitute clear and cogent evidence of the release's invalidity.

¶ 57    That said, we are persuaded that Wilmington Savings has presented evidence that Herzog's mortgage has simply not been paid off. Further, the amount of his indebtedness at the time the motion for summary judgment was filed was $2,481,266.62, according to an affidavit from BSI on behalf of Wilmington Savings. As Herzog himself states in his brief, "[t]he Release unambiguously states that it was issued 'for and in consideration of the payment of the indebtedness secured by the borrower[.]" Although he contends that this recital defeats Wilmington Savings's contention that consideration was not given, we construe that recital differently in light of the evidence of Herzog's continuing indebtedness. In our view, the release

contains a specific recital of consideration, namely the payment of Herzog's indebtedness, which at that time was more than $1.7 million. Although he asserts that consideration could have taken another form, the specificity of the release leaves no room for such an inference.

¶ 58    Further, and although neither party appears to press the point here, during his deposition, Herzog was asked a series of questions regarding tax consequences resulting from the release. He was specifically asked whether he had received a 1099-C for the property after release of the mortgage was recorded. In response to every question regarding tax consequences, Herzog repeatedly stated that he had "no recollection."

¶ 59    We need not delve too deeply into the taxation issue here. Suffice it to say that if Wells Fargo had discharged $1.7 million of debt to Herzog, it would have been required, not only to notify the IRS of the same, but also Herzog. See *In re Estate of Hofer*, 2015 IL App (3d) 140542, ¶ 22 (Form 1099-C "was created for the mandatory reporting by applicable entities to the IRS of discharges, cancellations, or extinguishments rendering a debt unenforceable or uncollectible y the creditor."); see also 26 CFR § 1.6050P-1(a) (2016). And, notice would not have been the end of the story, for forgiveness of the debt would have resulted in personal income to Herzog, also reportable to the IRS (26  U.S.C. § 61(a)(11) (2017) (income for discharge of indebtedness is included within gross income)) and, not likely an event that one would have forgotten.

¶ 60    Given that, we are simply hard pressed to believe, number one, that Herzog had no recollection of not having received a 1099-C, if as he maintains, the debt had actually been released. Number two, given that lenders are not in the habit of giving away money, it strains the bounds of credulity that, on April 3, 2008, Wells Fargo granted a loan modification, increasing Herzog's mortgage to $1,728,798 and then, a few short days later, on April 18, 2008, that same mortgage was released. Other than his protestations regarding Wilmington Savings's lack of proof

of consideration, Herzog has presented no evidence to defeat summary judgment. The simplest proof would have been cancelled checks or some other documents bearing the account number for payment on the mortgage identified in the release, materials clearly under Herzog's control. Clearly, the purported release was filed in error.

¶ 61 In sum, Herzog has presented no evidence that contradicts Wilmington Savings's proof of lack of consideration, and thus, there is no genuine issue of material fact before the court regarding consideration. Because Wilmington Savings presented "clear and cogent" evidence that consideration was not paid in exchange for the release, we conclude that the release was not a valid contract and Wilmington Savings had a valid, existing mortgage against Herzog. Therefore, Wilmington Savings was entitled to summary judgment as a matter of law.

¶ 62 As a final aside, it is not lost on this court that Wilmington Savings's predecessor in interest, Wells Fargo, was in no way prompt in seeking to rescind the invalid release. The affidavit of rescission was not filed until seven years after the release was recorded. Considering there was no consideration for the release, and because we have no reason to believe that Wells Fargo, having entered into a loan modification with Herzog, intended to then effectively gift Herzog with millions of dollars, it is obvious that Wells Fargo made a serious error. Additionally, the complete lack of evidence presented regarding the circumstances which led to the execution and recording of the release is disconcerting, albeit not surprising considering fifteen years have passed since then. Nonetheless, under the circumstances before us, we cannot contemplate any better evidence available to Wilmington Savings to prove Herzog's failure to give consideration than proof of his multimillion dollar outstanding indebtedness to Wilmington Savings.

¶ 63 For that reason, we conclude that the circuit court properly granted summary judgment in favor of Wilmington Savings.

¶ 64                    C. Confirmation of Sale and Deficiency Judgment

¶ 65    We next address Herzog's challenges to the confirmation of sale and deficiency judgment. Herzog requests that this court "reject the sale" or "require an evidentiary hearing to determine whether it should be approved[.]" Herzog contends that the deficiency judgment was unfair and Wilmington Savings "made no effort to overcome the presumption that the value of the collateral is equal to the indebtedness."

¶ 66    In response, Wilmington argues that Herzog "makes no showing as to any of the factors set forth in section 1508 of the Foreclosure Law," his sole objection to the confirmation of the sale "is based upon conjecture regarding the fair market value of the property," and he provided no proof that the sale price obtained at the foreclosure sale was unconscionable. For the following reasons, we agree with Wilmington Savings.

¶ 67    A judicial foreclosure sale must be approved by the circuit court. *Citicorp Savings v. First Chicago Trust Co.*, 269 Ill. App. 3d 293, 300 (1995). Confirmation of a judicial sale is governed by section 15-1508(b) of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15/-1501 *et seq.* (West 2022)), which provides, in pertinent part:

> (b) Hearing. Upon motion and notice in accordance with court rules applicable to motions generally, which motion shall not be made prior to sale, the court shall conduct a hearing to confirm the sale. Unless the court finds that (i) a notice required in accordance with subsection (c) of Section 15-1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was not otherwise done, the court shall then enter an order confirming the sale.

***

(e) Deficiency Judgment. In any order confirming a sale pursuant to the judgment of foreclosure, the court shall also enter a personal judgment of deficiency against any party (i) if otherwise authorized and (ii) to the extent requested in the complaint and proven upon presentation of the report of sale in accordance with Section 15-1508. Except as otherwise provided in this Article, a judgment may be entered for any balance of money that may be found due to the plaintiff, over and above the proceeds of the sale[.] *** Such judgment may be entered, or enforcement had, only in cases where personal service has been had upon the persons personally liable for the mortgage indebtedness, unless they have entered their appearance in the foreclosure action." 735 ILCS 5/15-1508(b), (e) (West 2022).

¶ 68    It is well settled that a reviewing court reviews an order confirming a judicial sale for abuse of discretion. *CitiMortgage, Inc. v. Lewis*, 2014 IL App (1st) 131272, ¶ 31. This court also reviews the denial of an evidentiary hearing under section 15-1508 for an abuse of discretion. *Deutsch Bank National Trust Co. v. Cortez*, 2020 IL App (1st) 192234, ¶ 17. A circuit court abuses its discretion when its ruling rests on an error of law or where no reasonable person would take the view adopted by the circuit court. *CitiMortgage, Inc. v. Bermudez*, 2014 IL App (1st) 122824, ¶ 57.

¶ 69    It is not unusual for property to bring less than its full, fair market value at a forced sale. *NAB Bank v. LaSalle Bank*, 2013 IL App (1st) 121147, ¶ 20. "[M]ere inadequacy of price alone is not sufficient cause for setting aside a judicial sale." *Illini Federal Savings & Loan Association v. Doering*, 162 Ill. App. 3d 768, 771 (1987). "This rule is premised on the policy which provides stability and permanency to judicial sales and on the well-established acknowledgment that property does not bring its full value at forced sales and that the price depends on many circumstances for which the debtor must expect to suffer a loss." *World Savings & Loans Ass'n v.*

*Amerus Bank*, 317 Ill. App. 3d 772, 780-81 (2000). The party objecting to the sale bears the burden of proving that sufficient grounds exist to disapprove the sale. *Lewis*, 2014 IL App (1st) 131272, ¶ 31. Finally, regarding evidentiary hearings on foreclosure sales, one is only warranted where the debtor has presented a "current appraisal or other current indicia of value which is so measurably different than the sale price as to be unconscionable." *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 115 (1993).

¶ 70   Here, the record shows that Herzog's original mortgage on the property was for $1,499,799 and after the second modification, the amount of indebtedness was  $1,728,798.05. In its motion for confirmation of sale and deficiency judgment, Wilmington Savings attached exhibits showing that the total amount due to Wilmington Savings at the time of the foreclosure sale was $2,661,691.18. On April 19, 2022, the property sold for $1,088,000, which is a portion, but not all, of Herzog's total indebtedness. According to Wilmington Savings's exhibits, the amount of indebtedness remaining after the sale was $1,574,091.18. The property was then sold again in 2023 for $1,000,000, which Wilmington Savings contends is evidence that the property was sold at the foreclosure sale for near fair market value.[3]

¶ 71   "When there is no fraud or other irregularity in the foreclosure proceeding, the price at which the property is sold is the conclusive measure of its value." *Nationwide Advantage Mortg. Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 35. Such is the case here where Herzog's only challenge to the sale is based on conjecture alone regarding the fair market value of the property. He does not present any evidence that the sale price was unconscionably low or that there was any other flaw in the sale. He only cites to an online real estate website, stating that the property's value is

---

[3] This court may take judicial notice of the public records of the Cook County Clerk's Office. *Bayview Loan Servicing, LLC v. Szpara*, 2015 IL App (2d) 140331, ¶ 31.

estimated between $1.73 and $1.91 million. This is insufficient evidence to place unconscionability of the sale price into issue. In any case, "[r]ecent case law suggests that a sale price below 50% of fair market value is a reasonable threshold for unconscionability." *T2 Expressway, LLC v. Tollway LLC*, 2021 IL App (1st) 192616, ¶ 29. Even if we were to find that $1.91 million is the fair market value of the property, the sale price of $1,088,000 would still not be less than 50% of the fair market value. As such, an evidentiary hearing was not warranted on unconscionability. Rather, the circuit court's order expressly stated that all required notices were given, the sale was "fairly and properly made," and justice was otherwise done. Thus, all of the statutory criteria were met in this case, and the court properly confirmed the sale in accordance with section 15-1508(b) of the Foreclosure Law.

¶ 72 The deficiency judgment was also correctly entered against Herzog. The court was required under section 15-1508(e) to enter a deficiency judgment against Herzog where a balance remained due to Wilmington Savings after the sale of the property, the complaint properly requested a deficiency judgment, and Herzog voluntarily entered his appearance in the foreclosure action. See *U.S. Bank Trust, N.A. v. Atchley*, 2015 IL App (3d) 150144, ¶ 11 (stating that section 15-1508(e) is mandatory, not permissive, and a trial court must grant a deficiency judgment when the requirements of that section are met). Thus, the court did not err by granting the deficiency judgment where all of the statutory criteria were met.

¶ 73 Finally, Herzog cites *First Galesburg National Bank and Trust Co. v. Joannides*, 103 Ill. 2d 294 (1984), which is inapposite. In that case, our supreme court ruled that the failure of the creditor to give notice of the sale of the collateral to the debtor resulted in a rebuttable presumption that the value of the collateral is equal to the indebtedness. *Id.* at 300. In contrast, this case does not involve a failure of Wilmington Savings to give notice to Herzog of the property sale.

- 24 -

Moreover, *First Galesburg* involved the sale of cars and the Uniform Commercial Code. *Id.* at 296-99. Similarly, *Munao v. Lagattuta*, 294 Ill. App. 3d 976, 979-83 (1998), involved the Uniform Commercial Code and the sale of restaurant equipment and, thus, is not applicable to the case before us which involves a foreclosure. Herzog also cites to *Munao* for the proposition that a sale must have been "commercially reasonable" to support a deficiency judgment. Again, *Munao* applied the law under the Uniform Commercial Code and, thus, it has no relevancy to the proceedings in this case. Our own research has revealed that any reference to whether a sale was "commercially reasonable" is only found in cases involving the Uniform Commercial Code. As such, we do not find this contention or any of Herzog's cited authority persuasive here.

¶ 74    Accordingly, the circuit court did not abuse its discretion in confirming the sale and entering the deficiency judgment against Herzog without an evidentiary hearing.

¶ 75                                  D. Expungement of the Recorded Release

¶ 76    Count II of Wilmington Savings's complaint requested a declaratory judgment expunging the recorded release from the public record. The circuit court granted summary judgment in favor of Wilmington Savings but its written order failed to expressly grant the requested relief under count II. The evidence necessary to address Wilmington Savings's request is before this court.

¶ 77    As we discussed above, Wilmington Savings demonstrated that, despite the recorded release of mortgage, Herzog remained indebted to Wilmington Savings under the mortgage for more than $2 million. The remaining debt was clear and cogent evidence of a lack of consideration in exchange for the release of indebtedness. Herzog failed to provide any evidence to the contrary. Thus, based on the record before us, we find that Wilmington Savings's predecessor, Wells Fargo, recorded the release in error and a declaratory judgment expunging the release was warranted in this case.

¶ 78   Pursuant to Illinois Supreme Court Rule 366 (eff. Feb. 1, 1994), a reviewing court, in any appeal, may, in its discretion, "enter any judgment and make any order that ought to have been given or made *** that the case may require." As such, we exercise our supervisory power to direct the circuit court to enter an order expunging the erroneously recorded release from the public record.

¶ 79                                III. CONCLUSION

¶ 80   For the reasons stated, the judgment of the circuit court of Cook County is affirmed, and we remand for the circuit court to comply with the directions set forth above.

¶ 81   Affirmed and remanded with directions.